**UNITED STATES of America,
Appellee,**

v.

**Delmar Earl CHRISCO, Appellant.**

**UNITED STATES of America,
Appellee,**

v.

**Lewis HOWELL, Appellant.
Nos. 73–1101, 73–1145.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1973.

Decided March 14, 1974.

---

Robert Garfield, and Thomas C. Palmer, St. Louis, Mo., for appellants.

Michael W. Reap, Asst. U. S. Atty., St. Louis, Mo., for appellee.

Before GIBSON and BRIGHT, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

BRIGHT, Circuit Judge.

Appellants Delmar Earl Chrisco and Lewis Howell were tried before a jury in the United States District Court for the Eastern District of Missouri in January 1973 and convicted of robbing the Bank of St. Mary's in St. Mary's, Missouri, on August 3, 1972, in violation of 18 U.S.C. § 2113. On appeal, they raise a total of 12 separate allegations of error. We have examined each ground of error but find no grounds for reversal. Two grounds merit detailed discussion —those relating to the impaneling of the jury and to the prosecutor's closing argument.

I.

In their briefs and at oral argument, appellants Chrisco and Howell strongly urged that it was plain error for them to be removed from the courtrooom involuntarily during the peremptory challenges of the jury. This contention, if proved true, presents a serious constitutional challenge to the conduct of their trial.

The right of a defendant to be present during the process of impaneling the jury was enunciated long ago by the Supreme Court. *See* Pointer v. United States, 151 U.S. 396, 408, 14 S.Ct. 410, 38 L.Ed. 208 (1894); Lewis v. United States, 146 U.S. 370, 376, 13 S.Ct. 136, 36 L.Ed. 1011 (1892); Hopt v. People of the Territory of Utah, 110 U.S. 574, 579, 4 S.Ct. 202, 28 L.Ed. 262 (1884).

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

More recently, the Supreme Court has held this principle to be guaranteed through the confrontation clause of the sixth amendment, *see* Illinois v. Allen, 397 U.S. 337, 338, 90 S.Ct. 1057, 25 L. Ed.2d 353 (1970), and lower courts have regularly found a due process dimension to it. *See* Bustamante v. Eyman, 456 F.2d 269, 273 (9th Cir. 1972); United States v. Crutcher, 405 F.2d 239, 242–243 (2d Cir. 1968), cert. denied, 394 U. S. 908, 89 S.Ct. 1018, 22 L.Ed.2d 219 (1969); Parker v. United States, 184 F.2d 488, 490 (4th Cir. 1950); Fina v. United States, 46 F.2d 643, 644 (10th Cir. 1931). Fed.R.Crim.P. 43 explicitly embodies this principle, stating that: "[T]he defendant shall be present * * * at every stage of the trial including the impaneling of the jury * * *."

Because the transcript in this case was devoid of details concerning the selection of the jury, we issued an order, reported at 487 F.2d 505 (8th Cir. 1973), which reads in pertinent part as follows:

> [W]e remand this case to the trial court for preparation of an appropriate record of the proceedings in the impaneling of the jury, including a showing of whether appellants were present in court during the exercise of their peremptory challenge by counsel. Additionally, * * * the record should include any circumstances, not presently disclosed in the transcript, bearing on the issue of whether there was a knowing and voluntary waiver of their right to be present at the peremptory challenge stage. [487 F.2d at 506.]

That supplementary record is now before us, and the following facts appear uncontested:

1) Appellants Chrisco and Howell were present in the courtroom during the entire voir dire of the jury and during the strikes for cause on January 10, 1973;

2) Appellants were removed from the courtroom immediately prior to the noon recess so that the veniremen would not see the defendants manacled outside the courtroom when the panel was excused for lunch;

3) Appellants were taken for lunch to the United States Marshal's office, which is on the same floor as the courtroom;

4) The judge declared the noon recess and the entire venire was taken out of the courtroom for lunch;

5) The judge then left the courtroom;

6) Defense counsel were aware that defendants would be kept in the United States Marshal's office during the noon recess;

7) Counsel for appellants and counsel for the Government briefly remained behind, made their peremptory strikes, and gave this list to the clerk of the court;

8) At approximately two o'clock, court was reconvened, and, in the presence of counsel for appellants, the entire venire was brought back into court and the list of strikes was read off by the clerk of the court, thus impaneling a jury of twelve;

9) At some point following the noon recess, the appellants were brought back into the courtroom and immediately registered with their counsel dissatisfaction regarding certain members of the venire who eventually served on the jury; and

10) This problem was discussed among the three defense attorneys, but neither the defendants nor their attorneys made any statements to the trial judge objecting to or questioning the impaneling of the jury.

The only disputed fact relating to the impaneling proceedings was whether the appellants were present in the courtroom when the list of strikes was read off and the jury sworn. At the supplementary hearing on this matter, the appellants and two of their three defense counsel testified that, to the best of their recollection, the defendants were not brought back into the courtroom until after the jury had been sworn. The bailiff and the clerk of the court, on the other hand,

testified that the rigidly-adhered-to practice of the court was to have the defendants present when the strikes were called off and the jury sworn. When pressed on the matter, however, none of these witnesses could assert a clear memory of the specific events in question.

At the conclusion of the supplementary hearing, the trial judge stated:

> But I think the record should show that all the proceedings after the recess went on were in open Court and before all of counsel and both defendants. In other words, at the time the results of the strikes were called out, that that was done in open Court.

We accept this statement as the court's finding of fact as well as a summary of his personal recollection on the question of the defendants' presence when the list of strikes was read off and the jury sworn. The legal question remains for us to decide whether, on the facts above, appellants have shown a violation of their constitutional rights or a violation of their procedural rights under Fed.R. Crim.P. 43 amounting to plain error under Fed.R.Crim.P. 52(b). On the record before us, we think not.

■ To be sure, the process of "impaneling" a jury—at which Fed.R.Crim. P. 43 insures the defendants' presence —encompasses all the steps of selecting a jury, including the peremptory striking of members of the venire.

■ Although the appellants were absent from the courtroom when their counsel informally conferred and made their strikes, the trial court in the supplementary record has found that both appellants were present in the courtroom when those strikes were given actual effect by the clerk's reading off the list. Further, it seems clear from the record that appellants discussed their misgivings with counsel during or immediately following the formal impaneling process and that the decision was made by counsel not to raise any objection at that time.[1] Whether this decision was made

1. The following testimony appears in the supplementary transcript:

> We made our strikes, went to lunch, came back, the panel was—the jury was sworn, put in the box and Mr. Chrisco and Mr. Jeffries and Mr. Howell came back in the courtroom and immediately upon coming into the courtroom Mr. Chrisco signaled to me and called me over. I went over and talked to Mr. Chrisco and he pointed to two of the jurors. He did not know their names. He said: "I don't like that lady and that lady." And he was referring to Mrs. Marguerite Larkin and Mrs. Phyllis Pennock.

> At this time I thought that was a valid thing to say to me and I went over and it was obvious to me—although he did not state specifically, it was obvious to me he wanted me to object to these two jurors and I wasn't sure whether he had a right to be there or not during the pre-emptory strikes. So I went over to talk to Mr. Cox [codefendant-Howell's attorney] and I asked Mr. Cox, and I said to Mr. Cox: "Does Mr. Chrisco have a right—or Mr. Chrisco doesn't like ·these jurors, should I object to the trial judge?" And Mr. Cox told me: "No, don't object to the trial judge."

> THE COURT: Did these two parties serve on the panel?
> THE WITNESS: Yes, they did, Your Honor, that's why he pointed to them, they were—

> THE COURT: All right, go ahead.
> THE WITNESS: And actually, Mr. Cox —I don't remember the specific conversation, but his general attitude was this [sic] is nothing amiss here, this is standard operating procedure, and I thought, well, if that's the case there's no point in me making a frivolous objection. So I felt at that time I was going to probably make enough frivolous objections during the trial, I better not make another one. So I went back to Mr. Chrisco and said to Mr. Chrisco: "Mr. Cox said he doesn't think you have a right to be present during pre-emptory challenges." And he just frowned as if to say I don't like those two jurors. And I didn't think a thing about it the rest of the trial until it was obvious that Mrs. Larkin was the forewoman and then I became somewhat concerned. I thought well, one specific individual that he was most discontented with ended up as the forewoman. I thought this was either good or bad. I didn't think a thing of it until about three weeks later and

as a result of tactical considerations [2] or as a result of inexperience and ignorance of the law [3] is not material to our disposition of this case, for we hold that under the facts shown the appellants were sufficiently "present" at the impaneling of the jury to satisfy Fed.R.Crim.P. 43 and the Constitution, since they both observed the strikes being read off and registered their opinions of the venire with their counsel.[4]

■ While no error is thus shown on this record, we wish to make it clear that the trial court has a responsibility to make sure that defendants are given an ample opportunity to confer with their counsel during all phases of the jury selection process including the exercise of peremptory strikes.[5] As the Second Circuit has stated in United States v. Crutcher:

> [T]here is no way to assess the extent of the prejudice, if any, a defendant might suffer by not being able to advise his attorney during the impaneling of the jury. * * * [W]e can only speculate as to what suggestions [the defendant] might or might not have made, since it would be his prerogative to challenge a juror simply on the basis of the " 'sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another.' " [Blackstone's Commentaries, quoted in] Lewis v. United States, 146 U.S. at 376, 13 S.Ct. 136. [405 F.2d at 244.]

The slight additional burden on the criminal justice process which is wrought by such a requirement is more than offset by the avoidance of lengthy appeals and remands—like the case at bar—to determine if the mandate of Rule 43 and the Constitution have been met.

## II.

■ Appellants have also claimed error in the prosecutor's remarks during closing argument. After several heated exchanges between defense counsel and the prosecution, the Government began its rebuttal argument by criticizing defense counsel's theory that the F.B.I.'s pretrial photographic identification procedures related to defendant-Chrisco had been suggestive. The prosecutor then concluded:

> Well, we don't operate that way, my friends. That's not the point of it at all. The point of it all is we don't prosecute people for crimes they don't commit.

Such a statement is, of course, error, for it amounts to an appeal to the jury to substitute the power, prestige, and integrity of the Government for a neutral determination of the facts. *See* United States v. Lamerson, 457 F.2d 371, 372 (5th Cir. 1972); Hall v. United States, 419 F.2d 582, 587 (5th Cir. 1969).

At oral argument in this appeal, the Government confessed error on this point, but urged that it was not prejudicial error because the improper remarks were "invited or provoked by opposing counsel." Myres v. United States, 174 F.2d 329, 339 (8th Cir. 1949); *accord,* United States v. Phillips, 482 F.2d 191, 196 (8th Cir. 1973); Homan v. United

---

then my question was: Is voir dire part of the impaneling? I wasn't even sure that it was part of a so-called impaneling of the jury, and in case research I found out that it was.

2. At the supplementary hearing, for example, defense counsel recalled that they originally had a positive reaction to one of the two jurors that appellant-Chrisco informed his attorneys that he disliked.

3. At the supplementary hearing, all three appointed defense counsel testified that they

had never tried a criminal case in federal court. Two had never tried any criminal case before a jury; the third had not tried any criminal cases at all for 11 years.

4. Whether counsel must heed such recommendations is a question we are not called upon to answer in this appeal.

5. The exact mechanics of this requirement are properly the subject of the trial court's discretion.

States, 279 F.2d 767, 775 (8th Cir.), cert. denied, 364 U.S. 866, 81 S.Ct. 110, 5 L.Ed.2d 88 (1960). In support of this theory, the Government points to the comments of the trial judge in overruling defense counsel's objection to the prosecutor's remarks:

Well, gentlemen, there has been in this case in argument, not on your part, Mr. Cox [attorney to defendant-Howell], but there has been argument here, some of it objected to and some not, inferring that the FBI and the Government apparently prompted some of this evidence and plotted it. There is not one scintilla of evidence to that effect, and in that context, I regard Counsel's argument as proper.

We do not agree that the prosecutor's argument was proper, and a curative instruction should have been immediately given by the trial judge.

Without exception, the cases that have found no reversible error in a prosecutor's improper remarks have drawn attention to the prompt action of the trial judge in admonishing the jury to disregard such statements. Though no such instruction was given here, we nevertheless find no prejudice for "the effect of the error must be gauged in the context of the entire trial, and not in isolation." United States v. Phillips, *supra*, 482 F. 2d at 196.

The evidence of appellants' guilt is overwhelming. A procession of eye witnesses identified appellant-Chrisco and Harold Jeffries—who pleaded guilty prior to trial—as the two men who entered and robbed the Bank of St. Mary's on August 3, 1972. Although no eye witness identification linking appellant-Howell to the robbery was introduced, witnesses testified to seeing the two men enter a yellow Ford Torino in which a third man was waiting. The license on that car was registered in Howell's name. Later that afternoon the yellow car was found abandoned and without plates; one of Howell's fingerprints was on this car which had been stolen the previous day.

Later that night, Jeffries, Howell, and three women were stopped by police in a red Ford convertible and the two men arrested. The car was searched and the license plates belonging to Howell found in the trunk. Some $1,750 in cash was found on Howell's person. A subsequent consensual search of Jeffries' home turned up some $21,000 in cash, two .38 caliber pistols, and two shirts identified by witnesses as those worn by the robbers. Appellant-Chrisco was apprehended on September 1, 1972, after eye witnesses identified his photograph from police mug shots.

Where the evidence is so substantial, we do not think that the Government prosecutor's remarks were prejudicial. A different result, however, might well follow if the case were more marginal.

### III.

We have examined the ten remaining allegations of error jointly or individually raised by appellants, and find them to be without merit.

■ Appellants challenge the trial court's instruction on reasonable doubt which stated that the standard is proof of such "convincing character that you would be willing to rely and act upon it unhesitatingly." We find no error here. *See* Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1955); *cf.* United States v. Atkins, 487 F.2d 257, 260 (8th Cir. 1973).

■ Appellants attack as plain error the trial court's curative instruction to the jury during the redirect examination of one of the witnesses that "the Court presumes that all witnesses are telling the truth." Our court dealt with a similar claim in United States v. Gray, 464 F.2d 632 (8th Cir. 1972), and held that, while this statement served no useful purpose and should have been omitted where the trial court fully explained the jury's obligations in determining the facts in the final instructions, there is no error. *See* United States v. Gray, 464 F.2d at 638; *cf.* Cupp v. Naughten, 414 U.S. 141, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973).

Appellant-Chrisco argues that the photographic identification procedures used by the police and F.B.I. in the pretrial, post-arrest period were constitutionally defective since defense counsel was not present at the photo array. This claim has been effectively dispensed with by the Supreme Court's rejection of the sixth amendment argument in United States v. Ash, 413 U.S. 300, 93 S.Ct. 2568, 37 L.Ed.2d 619 (1973).

Appellant-Chrisco argues that his attorney was improperly cut off by the trial court from pursuing a claim that the Government had "suggested" the identification testimony given by witnesses for the prosecution. The rule is well established that the extent and scope of cross-examination are within the discretion of the trial court. *See, e. g.*, United States v. Hiken, 458 F.2d 24, 26 (8th Cir. 1972). Defense counsel's questions here had become repetitive without producing any positive results. There was therefore no abuse of discretion by the court in ordering them curtailed.

Appellant-Howell challenges the trial court's decision to permit Harold Jeffries, a co-indictee who already had pleaded guilty, to be seated in the courtroom with the defendants. The presence of such a person, like that of any other witness, is in the sound discretion of the trial judge. *See* Laird v. United States, 252 F.2d 121, 122 (5th Cir. 1958). It appears that the tiny courtroom in which this case was tried was too crowded and necessitated placing Jeffries near the defendants. This serves as adequate justification for the challenged procedure.

Appellant-Howell next claims that the seizure of his car license plates from the trunk of the red Ford convertible without a warrant is a fourth amendment violation. The circumstances of this case show the search to be proper. *See* Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1969).

Appellant-Howell next claims that the introduction into evidence of the revolvers, money, and clothes seized at the home of Jeffries, the co-indictee who pleaded guilty prior to trial, was prejudicial error because they were irrelevant. We disagree. Proof of the guilt of a principal is admissible at the trial of an accomplice. *See* United States v. Deutsch, 451 F.2d 98 (2d Cir. 1971). Since a defendant can be convicted as a principal for aiding and abetting under 18 U.S.C. § 2 without being specifically charged as such in the indictment, *see* United States v. Lugo-Baez, 412 F.2d 435 (8th Cir. 1969), proof of the entire criminal transaction is relevant to the proof of Howell's guilt.

Appellant-Howell further complains of the failure of the trial court to sever his trial from that of appellant-Chrisco. Under Fed.R.Crim.P. 14 and case law, this matter is within the sound discretion of the trial court and his ruling will rarely be disturbed on review. United States v. Bazinet, 462 F.2d 982, 992 (8th Cir. 1972). There has been no showing of an abuse of discretion.

Appellant-Howell next argues that the authenticity of an Illinois motor vehicle document found on his person which identified the license plates found in the red Ford convertible as his was not properly established. By its terms, Fed.R.Crim.P. 27 permits proof of official records in the same manner as in civil actions. Since Fed.R.Civ.P. 44 would permit proof of registration in the manner here employed, there is no error.

Finally, appellant-Howell argues that the evidence was insufficient to convict him. We disagree. He was seen with Chrisco and Jeffries—both of whom were identified by eye witnesses as the robbers—both prior to and after the robbery; his license plates were on the getaway car; his fingerprints were found on the outside of the getaway car which had been stolen the day before the robbery and abandoned immediately thereafter; and an unusu-

ally large sum of cash was found on his person the evening following the robbery. This web of circumstantial evidence is clearly sufficient for conviction.

There being no error shown to justify reversal, we affirm the convictions.

Affirmed.