**UNITED STATES of America,
Appellee,**

**v.**

**Louis R. HOOG, Appellant.**

**No. 74-1259.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1974.

Decided Oct. 15, 1974.

Rehearing Denied Nov. 8, 1974.

Certiorari Denied March 3, 1975.
See 95 S.Ct. 1349.

**47**

George D. Blackwood, Jr., Kansas City, Mo., for appellant.

J. Whitfield Moody, Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before MATTHES, Senior Circuit Judge, BRIGHT, Circuit Judge, and TALBOT SMITH,* Senior District Judge.

BRIGHT, Circuit Judge.

The defendant-appellant, Louis R. Hoog, after trial before a jury, stands convicted on three counts of violating 18 U.S.C. §§ 2 and 1201(a).[1] The trial court sentenced him to life imprisonment on each count subject to the provisions of 18 U.S.C. § 4208(a)(2), with the sentences to be served concurrently. He appeals from the judgment, claiming several errors in the conduct of the trial.

A review of the facts upon which Hoog's conviction is based will aid in evaluating the merit, if any, of his appeal. At the time of the occurrence of the alleged offenses Hoog was self-employed as an electrician. He had been so employed since 1968. He had earlier been hospitalized for a form of schizophrenia. Hospitalization took place between 1954 and 1962, at irregular intervals, during his release on parole following a term of federal imprisonment and during a subsequent term of imprisonment for a state conviction of statutory rape. There is no evidence that Hoog was at any time hospitalized or treated for any mental condition between 1962 and the commission of the offenses with which he was charged, in May and August of 1973. We briefly recount the details concerning each charge.

*Count I*: On May 9, 1973, Hoog's son by a common law marriage, Jerry Mills,[2] induced one Tracy Eybel, age 16, to accept a ride in his pickup truck. She accepted his offer of a ride with the understanding that Mills would drive her to her home. She entered the truck shortly after midnight at her place of employment in Kansas City, Missouri. Shortly after Mills had begun to drive in the direction of Ms. Eybel's home, he received a message over a radio receiver located in the cab of the truck. Explaining to Ms. Eybel that an emergency had arisen, he thereupon turned the truck about and began driving in the opposite direction. He soon met the defendant, who joined him and Ms. Eybel in the truck. Whether the truck was in Missouri or Kansas at the time that Hoog entered it was not established by the evidence. Hoog rode with Mills and Ms. Eybel to within two or three blocks

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. Hoog was indicted in two counts for violation of both 18 U.S.C. §§ 2 and 1201(a), and in a third count for violation of § 1201(a) alone. Section 1201(a) provides:

 (a) Whoever knowingly transports in interstate or foreign commerce, any person who has been unlawfully seized, confined, inveigled, decoyed, kidnaped, abducted, or carried away and held for ransom or reward or otherwise, except, in the case of a minor, by a parent thereof, shall be punished (1) by death if the kidnaped person has not been liberated unharmed, and if the verdict of the jury shall so recommend, or (2) by imprisonment for any term of years or for life, if the death penalty is not imposed.

 Section 2 provides:

 (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

2. The indictment in this case named Hoog and Mills. Mills pleaded guilty to Count II and received a 15-year prison sentence.

of Mills' destination in an industrial area of Kansas City, Kansas. Hoog then departed the couple on the pretext of obtaining parts for some repair job. Mills then took Ms. Eybel to a deserted building and raped her. Hoog appeared on the scene soon thereafter and also raped her. Hoog and Mills then drove her home, at the same time offering their apologies for the assaults.

*Count II*: On August 1, 1973, Hoog induced one Patricia Justice, age 17, to accept a ride in his camper truck. She accepted his offer in the belief that he would drive her to his office for a job interview as a receptionist. She entered the truck in Kansas City, Missouri. Hoog then drove her to the same building in Kansas City, Kansas, where he and Mills had previously raped Ms. Eybel. He informed Ms. Justice that this would be her place of employment. He then briefly entered the building for the purpose of placing a telephone call. Upon returning to the truck, he drove her to a bar, where he placed another telephone call. He then drove her to an apartment complex in Lenexa, Kansas, where he met with Mills and introduced Mills to Ms. Justice as the person who would interview her for the position as a receptionist. Mills arranged to meet with Ms. Justice later in the afternoon to discuss the job. Hoog then drove her back to the bar; Mills soon joined them there. After Mills had arrived, Hoog excused himself, saying that he had to return home to his wife. Mills then proceeded with Ms. Justice to a motel in Missouri. Once at the motel, Mills led her into one of its units and physically assaulted her. In the course of the beating, Hoog appeared and offered to take her home. Hoog then drove Ms. Justice into Kansas and stopped his automobile in open country. Mills pulled up behind him, left his vehicle, and forcibly removed Ms. Justice from Hoog's car. As Mills was removing her, Hoog explained to Ms. Justice that he (Hoog) was "sorry" but that he had to "go home to my wife." Hoog departed and Mills then drove Ms. Justice to a remote area

where he beat and raped her. After this assault, Mills returned to the motel with Ms. Justice. The following morning Hoog appeared at the motel and spoke briefly with Ms. Justice, offering her the services of his family physician. Mills then drove her home.

*Count III*: On August 3, 1973, the day after Hoog had last spoken with Ms. Justice, Hoog offered a ride to one Karen Hughes, age 18, a hitchhiker. Ms. Hughes was seeking a ride to her home and Hoog agreed to take her there. Hoog then offered her a job at a pay of $125 weekly. Shortly after she had entered his automobile in Kansas City, Missouri, Hoog received a message over a radio receiver located in the front seat of the car. He thereupon explained that he must return to his office and that Ms. Hughes could apply for the job there. Hoog drove to Kansas City, Kansas, and stopped at the same building where he had earlier raped Ms. Eybel. He entered the building and then returned to the automobile. He then departed with Ms. Hughes, representing that he had urgent business to attend to and that he would eventually take her home. After making some additional stops, Hoog drove her to a remote area and raped her. He then drove her home, apologizing for his conduct.

Both Hoog and Mills were indicted on all three counts for

wilfully, knowingly and unlawfully * * * [transporting] in interstate commerce from Kansas City, Missouri, to the State of Kansas [Tracy Eybel, Patricia Justice and Karen Hughes], who had theretofore been unlawfully inveigled, decoyed, and carried away and held * * * for the purpose of rape, in violation of Title 18, United States Code, Section * * * 1201(a) * * *.

Hoog was indicted as an aider and abettor of Mills on counts I and II.

 Hoog seeks reversal of his conviction on several grounds. First, he contends that the court's ruling that he was mentally competent to stand trial

was clearly erroneous. This contention utterly lacks support. Following commitment to the Medical Center for Federal Prisoners in Springfield, Missouri, where he was diagnosed as competent to stand trial, Hoog was afforded a competency hearing by the court. The record discloses that there was ample evidence by which the court could reasonably have concluded that Hoog was competent to stand trial. Such a determination is for the trial court to make. *E. g.*, United States v. Davis, 365 F.2d 251, 256 (6th Cir. 1966). *See* United States v. Mercado, 469 F.2d 1148, 1152 (2d Cir. 1972); United States v. Maret, 433 F.2d 1064, 1067 (8th Cir. 1970), cert. denied, 402 U.S. 989, 91 S.Ct. 1678, 29 L.Ed.2d 155 (1971).

■ Second, Hoog contends that the court erred in denying his request for a severance of the three counts and a separate trial on each. He reasons that the alleged offenses occurred on different dates so as to constitute distinct offenses and that trial of the three counts together might lead the jury to cumulate evidence from one count to the next. On the facts and record of this case, our previous views in Johnson v. United States, 356 F.2d 680 (8th Cir.), cert. denied, 385 U.S. 857, 87 S.Ct. 105, 17 L. Ed.2d 84 (1966), are dispositive:

> Under Rule 8(a), Federal Rules of Criminal Procedure, joinder of offenses is ordinarily appropriate where, as here, the specific counts refer to the same type of offenses, occurring over a relatively short period of time, and the evidence as to each count of necessity overlaps. The prime consideration in determining whether or not to grant a severance is the possibility of prejudice to the defendant in conducting his defense. Weighing the danger of confusion and undue cumulative inference is a matter for the trial judge within his sound discretion. His denial of severance is not grounds for reversal unless clear prejudice and abuse of discretion is shown. There has been no such showing here. It is not

> enough simply to show that such joinder makes it more difficult to defend. [*Id.* at 682.]

*See also* United States v. Chrisco, 493 F.2d 232, 239 (8th Cir. 1974); United States v. Skillman, 442 F.2d 542, 554–556 (8th Cir.), cert. denied, 404 U.S. 833, 92 S.Ct. 82, 30 L.Ed.2d 63 (1971). Moreover, we note that Hoog was not tried with Mills, thereby minimizing the possibility that the jury would impute evidence of Mills' criminal conduct, particularly with respect to count II, to Hoog. *Cf.* United States v. Mankins, 497 F.2d 1265, 1266–1267 (4th Cir. 1974); United States v. Roell, 487 F.2d 395, 402 (8th Cir. 1973).

■■ Third, Hoog asserts that the court erred in denying his motion for a new trial or for judgment of acquittal notwithstanding the verdict on the ground that he was insane as a matter of law at the time of the alleged offenses. Insanity at the time of the offense is a question for the jury. *E. g.*, United States v. Archer, 450 F.2d 1106, 1108 (8th Cir. 1971), cert. denied, 405 U.S. 1044, 92 S.Ct. 1329, 31 L.Ed.2d 586 (1972); Beardslee v. United States, 387 F.2d 280, 295 (8th Cir. 1967); Alexander v. United States, 380 F.2d 33, 37–38 (8th Cir. 1967). After considering evidence of Hoog's satisfactory self-employment for five years immediately preceding the offenses, uninterrupted by any hospitalization or treatment for mental illness; testimony by the Government's expert witness (Dr. Taub) to the effect that Hoog's schizophrenia was in a state of remission at the time of the offenses; and testimony of the Government's expert witness (Dr. Marco) to the effect that Hoog's behavior during the alleged offenses reflected a substantial capacity to appreciate the wrongfulness of his conduct, the jury could reasonably have concluded that Hoog was not insane.

■ Fourth, Hoog argues that the court erred in not granting him a new trial or a judgment of acquittal for the admission of what he characterizes as irrelevant and prejudicial evidence. He

contends that by admitting five color photographs of Ms. Justice, taken August 3, 1973, and showing cuts and abrasions inflicted by Mills, and by admitting testimony on the subject of Mills' beating of Ms. Justice, the court predisposed the jury to sympathize with the victim, thereby unduly prejudicing Hoog, who had not participated in the beating. Were Hoog not charged in count II with aiding and abetting Mills, this line of reasoning might prove persuasive. It is noteworthy, however, that Hoog was charged in count II with both kidnaping Ms. Justice and aiding and abetting Mills in her kidnaping. As an aider and abettor, Hoog is subject to punishment for Mills' conduct. Hence, Mills' conduct is directly relevant to the issue of Hoog's guilt, and the trial court properly admitted evidence of the same. *See* United States v. Chrisco, *supra,* 493 F.2d at 239. In response to the contention that the photographs of Ms. Justice were of a gruesome nature, having a natural tendency to prejudice the jury, it should be observed preliminarily that even if they were gruesome, they would not for that reason alone be inadmissible. *E. g.,* Rivers v. United States, 270 F.2d 435 (9th Cir. 1959), cert. denied, 362 U.S. 920, 80 S.Ct. 674, 2 L.Ed.2d 740 (1960); 4 J. Wigmore, Evidence § 1157 at 340 (Chadbourn ed. 1972). In this case, however, there is no indication that the photographs were so gruesome or inflammatory that their prejudicial effect outweighed their probative value. *See* United States v. Burton, 485 F.2d 715, 717–718 (8th Cir. 1973).

Fifth, Hoog contends that the court erred when it refused to grant a new trial or a judgment of acquittal notwithstanding the verdict for certain remarks by the Government in its closing arguments. On rebuttal, counsel for the Government stated:

> Ladies and gentlemen, don't leave your common sense that you have gained throughout your life outside this courthouse or in this jury box when you go into the jury room to deliberate. Take your common sense

> with you and look at the facts and the evidence that has been produced.

> And, believe me, let's not let ignorance in allowing this man to be released under the evidence that has been presented to you, it is up to you, ladies and gentlemen, if you think the evidence is deficient, cut this man loose and let him back out.

It is the defendant's position that this comment constituted plain error insofar as it invited the jury to equate Hoog's acquittal with his release to commit new crimes against society. We hold that this statement did not amount to plain error. When viewed against the immediately preceding remark by counsel for the defendant that the jury must not concern itself with what action the court takes with respect to Hoog in event of acquittal, the Government's statement represents a response evoked by appellant's argument. *See* United States v. Milne, 498 F.2d 329, 330 (5th Cir. 1974).

Even if it is accepted that the statement constituted error, we conclude that the error was neither prejudicial nor plain. Not only did the court later instruct the jury that it may not take into its consideration of Hoog's guilt or innocence what punishment the court would impose should it return a guilty verdict and, by implication, what action the court would take should it return a verdict of not guilty, but also the evidence of Hoog's guilt was strong, minimizing the possibility that the jury would have reached a different verdict in the absence of the Government's statement. *See* United States v. Chrisco, *supra,* 493 F.2d at 237–238; United States v. Phillips, 482 F.2d 191, 196–197 (8th Cir.), cert. denied, 414 U.S. 1114, 94 S.Ct. 846, 38 L.Ed.2d 741 (1973).

Sixth, Hoog asserts that the court erred in not granting a new trial or a judgment of acquittal in view of the Government's "failure" to prove that any of the victims were transported across state lines against their will. This argument is frivolous. Uncontra-

dicted testimony of each victim discloses that either Mills or Hoog induced each of them to accept a ride by false representations. Once they had accepted a ride, Hoog or Mills lured or enticed each of them—again by false promises—to stay in the vehicle during its roundabout course into Kansas. The complaining witnesses were manifestly "inveigled" or "decoyed" into accepting rides within the plain meaning of 18 U.S.C. § 1201(a).

■ Seventh, Hoog contends that the court erred in not granting a new trial or a judgment of acquittal notwithstanding the verdict on counts I and II on the ground of insufficient evidence. He reasons that, in the absence of proof that he was with Ms. Eybel at the time of her interstate transportation by Mills, the jury could not convict him, either for kidnaping or for aiding and abetting. It is true that the Government did not introduce direct evidence that Hoog accompanied Ms. Eybel across the Kansas/Missouri border. However, there is ample evidence in the record to support an inference by the jury that Hoog, at the very least, aided and abetted Mills in the transportation. This inference alone will support the conviction on count I. The same reasoning governs with respect to count II. Although Hoog did not rape Ms. Justice, ample evidence was adduced by the Government to support the inference that Hoog, at the very least, aided and abetted Mills in the interstate transportation of Ms. Justice "for ransom or reward or otherwise." *Contrast* United States v. Kelton, 446 F.2d 669 (8th Cir. 1971).

■ Eighth, Hoog asserts that the court's jury instructions constituted plain error. He argues that the court did not define "unlawful," as it was applied to "inveigle" and "decoy," adequately to enable the jury to readily determine, within clearly ascertainable bounds, whether Hoog's conduct had been unlawful within the meaning of 18 U.S.C. § 1201(a). The court defined "unlawful" as "contrary to law." This is, admittedly, circular, and no definition at all. But this is not the end of the matter. The court defined "inveigle" as

to lure or entice or lead astray by false representations or promises, or other deceitful means.

It defined "decoy" as

enticement or luring by means of some fraud, trick, or temptation
* * *.

When viewed as a whole, these instructions give adequate notice to the jury of the content of the term "unlawful." *See* Johnson v. United States, 291 F.2d 150, 156–157 (8th Cir.), cert. denied, 368 U. S. 880, 82 S.Ct. 130, 7 L.Ed.2d 80 (1961). Moreover, we note that definition of "unlawful" as "contrary to law" is not so great an error in the context of this case as to constitute plain error, raising the prospect of a miscarriage of justice. *See* Johnson v. United States, *supra*; Armstrong v. United States, 228 F.2d 764, 768 (8th Cir.), cert. denied, 351 U.S. 918, 76 S.Ct. 710, 100 L.Ed. 1450 (1956).

■ Finally, Hoog contends, *inter alia*, that he was denied a speedy trial, denied effective assistance of counsel, and committed to the Medical Center for Federal Prisoners at Springfield, Missouri, in violation of his sixth and fifth amendment rights. We have examined these contentions and find them totally devoid of merit.

Affirmed.