UNITED STATES of America, Appellee,

v.

Alfonso DAVIS, Appellant.

No. 76–1708.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1976.

Decided July 6, 1977.

Rehearing and Rehearing En Banc Denied Aug. 3, 1977.

Philip S. Resnick, Minneapolis, Minn., for appellant; Bruce Hartigan, Minneapolis, Minn., on the brief.

John M. Lee, Asst. U.S. Atty., Minneapolis, Minn., for appellee; Robert G. Renner, U.S. Atty., Minneapolis, Minn., on the brief.

Before HEANEY and ROSS, Circuit Judges, and VAN PELT, Senior District Judge.*

* Robert Van Pelt, Senior United States District Judge, District of Nebraska, sitting by designation.

VAN PELT, Senior District Judge.

Alfonso Davis appeals his conviction by a jury on four counts of a ten-count indictment.[1] He asks us to find on appeal that:

1. the trial judge[2] erred in the sentencing procedure because he considered evidence outside the record;
2. defendant was denied his right to counsel because the trial court allowed the prosecutor to interrupt defense counsel's final argument and the prosecutor's final argument itself was objectionable;
3. it was error to admit certain items of evidence during the trial;
4. the search warrant lacked particularity and was not supported by probable cause; and
5. the trial court erred in denying defendant's motion to disclose the identity of the confidential informant who provided information in support of the search warrant.

The facts forming the basis for this indictment are as follows: On November 18, 1975, Drug Enforcement Administration (DEA) agent Donald Bloch purchased approximately twenty-eight grams of heroin from Dennis McDonald, who testified at trial that he was called by Davis and asked to deliver the heroin[3] and to collect $2,200.00 for it. McDonald testified he gave the money to Davis, and in return Davis gave him a gram of heroin. This forms the basis for Count I of the Indictment charging a violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Agent Bloch made another purchase of approximately an ounce of heroin on January 20, 1976. This time he was driven to Davis's house by Jarold Mason who made

him wait in the car. Bloch paid $2500.00. Mason testified $2000.00 went to Davis, intermediary Isaac Russell received $300.00, and Mason himself kept $200.00. Mason also took out some of the heroin before delivering it to Bloch. This forms the basis for Count II charging a violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Count III alleged possession with intent to distribute approximately 300 grams of marijuana; the jury found Davis not guilty of this offense, but guilty of the lesser included offense of possession. The marijuana was found in a search of Davis's house conducted with a search warrant. Count IV charged a conspiracy between Davis, Mason and McDonald to dispense and distribute controlled substances.

## I. SENTENCING

The maximum penalty for a violation of § 841(a)(1) is fifteen years imprisonment and/or a $25,000 fine. The trial court sentenced Davis to the maximum of fifteen years imprisonment on Counts I, II, and IV, the sentences to run consecutively, and imposed a fine of $10,000 on each count. On the Count III violation of § 844(a) the trial court imposed a $5,000 fine and one year imprisonment to run consecutive to the sentences on Counts I, II, and IV. The trial court also gave defendant a special parole term for the rest of his life, with defendant to remain incarcerated until the fines are paid.

Defendant contends on appeal that the trial court considered impermissible factors in determining the sentence. Specifically, he points to the trial court's questioning of defendant at sentencing as to whether he or an associate had threatened any of the witnesses in the case. Also, he complains that

1. The first four counts of the indictment pertained to narcotic offenses, and the remaining six counts pertained to firearm offenses resulting from finding six loaded guns in defendant's house during a search. The firearm offenses were severed from the narcotic offenses, which are on appeal here.

2. The Honorable Earl R. Larson, United States District Judge, District of Minnesota, Fourth Division.

3. McDonald testified Davis instructed him to give the heroin to a man named Isaac and collect $2200 from him, and that Isaac and Bloch arrived together. He testified that he was not sure to whom he handed the heroin, but that Bloch paid him the money.

the court asked why he kept six loaded guns in his house.

█ Each sentence is within the statutory limits. The record does not persuade us that the sentence imposed was based on a consideration of either the rumored threats to witnesses or the firearm charges which had been severed. Defendant denied that either he or an associate had threatened any witnesses, and defense counsel claimed he had not heard of any threats. The court replied:

> I am just asking the question. You may not, of course, have heard about this. There is a fairly long record of criminal activity, Mr. Davis, as you appreciate. I really think you are beyond any chance at all of rehabilitation.
>
> *     *     *     *     *     *
>
> At the time of the execution of the search warrant, why did you have six loaded firearms in that house?
>
> [Defense Counsel:] Your Honor, it seems that those charges haven't been disposed of yet. I would prefer that the defendant didn't answer the question.
>
> The Court: You're correct. Those counts have been severed.

The trial court then immediately pronounced the sentence. The court's comments indicate that he recognized defendant's right to remain silent on the counts relating to firearms. *See United States v. Pugh,* 509 F.2d 766, 769 (8th Cir. 1975), where the trial judge stated he would not inquire into a case pending against defendant. The trial judge expressed no disbelief when defendant informed him he was not responsible for any threats against witnesses. *See Allen v. United States,* 136 U.S. App.D.C. 223, 420 F.2d 223, 226 (1969), where the court held that just because the trial judge expressed a belief that witnesses in the case had been threatened it did not follow that he imposed a harsher sentence. *See also United States v. Agrusa,* 528 F.2d 944, 945 (8th Cir. 1976). The trial court did express concern with defendant's criminal record—which included convictions for beating an intended robbery victim with a

pistol (1962), armed robbery (1965), interstate transportation of forged money orders (1970), plus various other charges, some of which dealt with narcotics. The evidence clearly showed defendant to be a distributor of narcotics. We do not feel that the trial court abused its discretion in the sentence imposed.

## II.  CLOSING ARGUMENTS

The defense called no witnesses. Defense counsel in closing argument urged the jury to question the testimony of the co-conspirators who testified for the government and suggested that they may have framed Davis and that much of the evidence against Davis could be viewed in a light consistent with innocence. Defendant alleges error occurred in the following instances during closing arguments.

A. When defense counsel argued that perhaps Mason and McDonald were selling narcotics to Davis rather than Davis selling to them, the prosecutor objected that there was no evidence in the record to support that argument. The trial court agreed.

B. During the trial mannitol, a substance commonly used to dilute drugs, was introduced into evidence. A DEA agent who searched defendant's residence testified he found it hidden on a shelf behind a kitchen drainpipe. Defense counsel challenged the conclusion that it was a hiding place, stating:

> .  .  .  Agent Bloch calls it a hiding place. Now, I don't know. I wasn't there. I don't know what was in there, but it looks like—I mean, some of these items that were removed were inside there also.

T. III at 258. The prosecutor objected stating he believed defense counsel was present during the search. Defendant contends that this constitutes reversible error because the prosecutor went outside the record and asserted his personal knowledge and belief as to the facts not proven.

C. Defense counsel implied that two other individuals besides McDonald, Mason and Davis may have been involved in the conspiracy. The prosecutor objected stat-

ing that there was no evidence either of them had participated in any transaction. The court stated:

The jury will trust its own recollection of any evidence if there was evidence of that kind.

T. III at 264.

D. The prosecutor in his closing argument repeatedly stated that any plot to frame Davis existed only in defense counsel's mind.

E. The prosecutor in closing argument claimed that marijuana had not been found in the bedrooms of other persons sharing living quarters with Davis, although the prosecutor knew this statement was false because at the suppression hearing DEA agents testified they had not conducted thorough searches of those rooms.

F. It was the duty of the trial judge to keep the prosecutor's argument within permissible limits, even though defense counsel did not object to the erroneous remarks.

Defense counsel contends that all of the above destroyed his credibility in the eyes of the jury, and so limited his argument on behalf of defendant that defendant was denied effective assistance of counsel. We have read the record and jury instructions and find no prejudicial error in the closing arguments.

■ With regard to defendant's allegations in above lettered paragraphs E and F, failure to raise a timely objection to the prosecutor's argument precludes its assertion as error on appeal in the absence of plain error. *United States v. Lawson,* 483 F.2d 535, 538 (8th Cir. 1973), *cert. denied,* 414 U.S. 1133, 94 S.Ct. 874, 38 L.Ed.2d 757 (1974); *United States v. Librach,* 536 F.2d

1228, 1231 (8th Cir.), *cert. denied,* 429 U.S. 939, 97 S.Ct. 354, 50 L.Ed.2d 308 (1976). It is true that DEA agents testified at the suppression hearing that they had not thoroughly searched the rooms occupied in Davis's house by his guests or tenants. However, the prosecutor's statements did not amount to plain error where the marijuana in Count III found during the search of Davis's residence was in Davis's office and a hall dresser adjacent to his bedroom and proof of his control and use of those areas was overwhelming. All of the evidence indicated that the marijuana belonged to Davis.

■ With regard to paragraphs A and C, the trial judge has broad discretion in controlling closing arguments. *United States v. Lawson, supra* at 539; *United States v. Pruitt,* 487 F.2d 1241, 1246 (8th Cir. 1973); *Bryant v. United States,* 462 F.2d 433, 436 (8th Cir. 1972); *United States v. Quinn,* 467 F.2d 624, 627 (8th Cir. 1972), *cert. denied,* 410 U.S. 935, 93 S.Ct. 1390, 35 L.Ed.2d 599 (1973). Even if it was error to restrict counsel's argument in this respect, we feel there was no prejudice because (1) the court did not instruct the jury to disregard the argument but merely refused to let counsel continue along the same lines; and (2) counsel attacked from every quarter the testimony and credibility of each witness and it could hardly be said that defendant was denied effective representation of counsel merely because of limitation of this one phase of the argument. For example, defense counsel was allowed to argue that Mason and McDonald had fabricated their stories in return for reduced charges and lesser penalties from the government.[4] Counsel returned to the theory of a frame

---

4. An example of defense counsel's aggressive credibility attack in the argument is the following:

They both talked to [the prosecutor] before they testified here in court. . . .

And I think you'll notice that things went a little smoother when [the prosecutor] asked the questions to Mr. McDonald and Mr. Mason. I think [the prosecutor] perhaps, during his summation, made what we call a Freudi-

an slip. Maybe you don't remember it, but I certainly do. He referred to what they said as stories. One time he referred to it as stories, and later on he again talked about testimony, which it was supposed to be. It's not supposed to be a story. But I'll submit to you, ladies and gentlemen, that the first time he said it, it was right. Stories—stories and rehearsed stories.

You think about it. You think about when [the prosecutor] asked them questions, the

on one occasion stating he found it very odd that only one of the currency bills used in two drug buys was found at Davis's house, that the search occurred on March 11th after evidence showed Davis had been out of town March 5th through March 8th, that an unknown informer had said there would be distributable quantities of heroin (which were never found), and that he found the timing of events:

> . . . to be rather strange coincidences. *Because I don't think they are coincidences.* (emphasis added.)

T. III at 256. We conclude counsel vigorously and forcefully defended Davis, and defendant was in no way denied effective assistance of counsel.

■ With regard to paragraph B, we fail to see how the interchange regarding whether defense counsel was present during or after the search[5] was prejudicial. Defense counsel's presence or nonpresence was not the issue being tried, and the jury had a photo of the cupboard where the mannitol was found, and could ascertain for themselves whether it would constitute a "hiding place."

■ With regard to defendant's complaint in paragraph D, the prosecutor's comments must be gauged in light of the entire trial. *United States v. Phillips,* 482 F.2d 191, 196 (8th Cir.), *cert. denied,* 414 U.S. 1114, 94 S.Ct. 846, 38 L.Ed.2d 741 (1973); *United States v. Chrisco,* 493 F.2d 232, 238 (8th Cir.), *cert. denied,* 419 U.S. 847, 95 S.Ct. 84, 42 L.Ed.2d 77 (1974). It appears that defense counsel is the one who first suggested to the jury that there were fabricated stories, that the government had been duped by Mason and McDonald and "[d]on't you be duped." T. III at 265. While the prosecutor may have been more repetitive along this line than necessary, it is obvious he was only responding to defense counsel's argument. Any error raised concerning closing arguments would be harmless in light of the strong evidence of defendant's guilt. *Phillips, supra; Chrisco, supra.*

## III. ADMISSION OF EVIDENCE

Davis contends it was error to admit certain evidence. The exhibits and testimony in question are:

1. Exhibit 13—A contract for deed to Davis for the house where he was arrested and in which the other exhibits hereafter listed were found, showing the purchase price as $116,-000.

2. Exhibit 19—$4300 in $100 bills found in a brass bed.

3. Exhibit 20—One of the $100 bills used by DEA agent Bloch in the drug buy of January 20, 1976, found in the brass bed mentioned in 2.

4. Exhibit 21—A sales receipt for a brass bed made out to Davis in the amount of $2,028.

5. Exhibit 23—Davis's bank statement.

6. Exhibit 25—Two jewelry sales receipts containing Davis's name; one for a watch in the amount of $2,900 and the other for remounting of jewelry for $540.

7. Testimony concerning Exhibit 10—A scale.

---

answers were very responsive. Boom, boom, boom, back and forth. When I asked them the questions, then they weren't quite so responsive, because they hadn't rehearsed that.

. . .

\* \* \* \* \* \*

Why did [Mason] plead guilty? Possession of that heroin that he sold to Agent Bloch, a crime that carries a maximum sentence of one year. That's what the statute says. That's the most he can be penalized for, as opposed to the crimes that he was charged with, which carry a statutory penalty of 15 years plus a special parole term. Now, you think about that, if that is not a motive for fabricating a story. I can think of a lot worse motives. Maybe it's not honest; maybe it's not honorable. But it's a pretty damn good motive.

T. III at 253–54, 257.

5. Defense counsel admitted at the time of the verbal exchange that he arrived at the scene after the search was concluded. Inasmuch as his comment seemed to imply he had never seen the placement of the kitchen shelf and could not judge whether it could be called a hiding place, it is clear he probably had an opportunity to look at it when he arrived.

Davis contends the above evidence was introduced to raise an inference that he was a narcotics dealer. He argues that the receiving in evidence of these exhibits was prejudicial, that evidence of other crimes was not established by clear and convincing evidence, that in admitting evidence of other crimes the court should have held a hearing on admissibility outside the presence of the jury, and that no cautionary instruction was given to the jury.

There are a number of reasons why Davis cannot prevail on these arguments.

▆▆▆▆ Exhibits 13, 19 and 20 were received in evidence without objection. Fed. R.Evid. 103(a)(1) provides that error may not be predicated upon the admission of evidence to which there was no timely objection unless it is plain error.[6] There was no plain error or prejudice in the admission of any of these three exhibits. Davis's wealth and dealing in narcotics could easily be inferred from other exhibits and testimony already in evidence without objection. For example, a diagram of Davis's 30-room house had been received and testimony had been given as to the layout of the house by the officers who had searched it. There was testimony that he had distributed heroin in the instant case; narcotics were found in rooms used by him; Exhibit 6 was a bottle containing mannitol, which is commonly used to dilute drugs. Exhibit 8, a kit containing chemicals of the type used to test for the presence of various drugs such as cocaine, barbiturates, marijuana, and heroin, was found in his home under a trap door or grate underneath the carpet. Exhibits 13, 21, 23 and 25 did not constitute direct evidence of other crimes, but even assuming that other crimes could be in-

ferred they would be admissible under Fed. R.Evid. 404(b) to show identity where it was essential that the government establish who occupied and used the room in which the $100 bill used in the January 20 drug buy was found and the areas in which the narcotics were found during a search of Davis's residence.[7] Had the government not proved Davis's occupancy, it is clear the defendant could have contended that those rooms were used by a tenant or guest. As it was, even with all this evidence, defense counsel's closing argument raised the question of whether the marijuana in Count III, some of which was found in Davis's office and the large bulk of which was found in a hallway chest adjacent to Davis's bedroom, could have belonged to all of the people who lived there.

▆▆▆▆ Jarold Mason testified he had seen Davis use Exhibit 10, the scale, to weigh heroin once or twice. After an objection by defense counsel, the court urged Mason to give an estimate of the date when he saw the scale used, to which he responded that it was about the month of February, and could have been any date. The conspiracy charged in Count IV included the month of February. Even if Mason could not recall the exact date the scale was used, or if its use did not relate to the instant offense, it would still be admissible under Rule 404(b) of the Federal Rules of Evidence. We recently stated in *United States v. Larson,* 555 F.2d 673 (8th Cir. 1977):

> This Court rejects defendant's contention that a witness must be able to recall the exact date that a statement was made. The witness' recollection of the date that the statement was made was sufficiently close in time to the date [of the crime

---

6. Defendant did specifically object to Exhibit 25, as well as 22 (airline tickets) and 24 (a hotel receipt). The government contends that the admission of exhibits 22 and 23 were not challenged on appeal. We do not have a list of the designated points on appeal, but note that defendant's argument never mentions those particular exhibits. We do not find that the result would have been any different here even if they had been raised on appeal.

7. Exhibit 21 was taken from defendant's office where marijuana and a small quantity of heroin were found. Exhibit 21 also reflected Davis's ownership of the brass bed where the currency (Exhibits 19 and 20) was found. Exhibit 23 came from the bedroom in which the brass bed was located, indicating the bed was not simply a piece of furniture in the house but was used by Davis. Exhibit 25 came from the bathroom adjoining Davis's bedroom.

charged] to support its admissibility. Even assuming that the car seen and the statement made with reference thereto were not the subject of the instant offense, we conclude that the evidence was admissible pursuant to Rule 404(b), Federal Rules of Evidence. (citations omitted.)

It is clear the testimony was relevant to show Davis's intent, preparation, plan, and knowledge with regard to the instant narcotics offenses. Although the trial judge did not give a cautionary instruction concerning this testimony or the admission of the other exhibits, we find no place in the record where defendant requested such an instruction or objected to its absence. In light of the strong evidence of guilt, failure to give a cautionary instruction was not such plain error as to require reversal. *United States v. Wiesle,* 542 F.2d 61 (8th Cir. 1976).

## IV. THE SEARCH WARRANT

A search warrant for Davis's house was obtained by DEA agent Bloch. Part of the information in Bloch's affidavit was based on information obtained from Minneapolis police officer Hitchens who had in turn received information from a reliable confidential informant. Appellant contends that this was not sufficient to establish probable cause for the issuance of the warrant because it was based on multiple hearsay and the scope of the search was not sufficiently limited to those areas occupied by Davis. We find no merit in this argument.

█ Agent Bloch's affidavit recited at length the qualifications of the informant, the surrounding circumstances of officer Hitchens' investigation and his own personal investigation. In *Gallagher v. United States,* 406 F.2d 102, 107 (8th Cir.), *cert. denied,* 395 U.S. 968, 89 S.Ct. 2117, 23 L.Ed.2d 756 (1969), we said:

At this point in the development of jurisprudence interpreting the Fourth Amendment, a claim that a search warrant is invalid because it is based entirely on hearsay is frivolous.

*See also Jones v. United States,* 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1959). We feel it is equally frivolous to contend that Bloch was not entitled to rely on information he obtained from Hitchens. The United States Supreme Court stated in *United States v. Ventresca,* 380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684 (1964):

Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number. (footnote omitted.)

Just because Hitchens and Bloch worked for different law enforcement agencies does not make them any less fellow officers. After all, affidavits for search warrants are to be "tested and interpreted by magistrates and courts in a commonsense and realistic fashion." *Id.* at 108, 85 S.Ct. at 746.

█ The search warrant was issued for the street address of Davis's house. The affidavit disclosed that the informant had personally seen drugs on all floors of the house including the basement on several occasions. The affidavit further stated that the investigating officers had checked the utility companies and all utilities at the address were currently in the name of Davis. Agent Bloch testified at the suppression hearing that although there had previously been telephones listed at Davis's address under other persons' names, when he attempted to call those numbers he was informed they were disconnected. At the suppression hearing officer Hitchens testified that the informant told him that at the time they were drawing up the warrant Davis lived there alone with the exception of his brother and possibly a girl friend who had just moved in. Bloch testified at the suppression hearing that Hitchens advised him that:

. . . there was one brother that lived there at times, he thought recently, he thought that he just had a bed there. I didn't know if he actually lived there or just stayed there overnight once in awhile, and also some females that came

once in awhile, and that was about it, but he didn't say that anyone was living there permanently with him.

T. June 11, 1976 at 13–14. It is clear that when agent Bloch applied for the search warrant he believed there were no private areas in the house. The house appeared to be a single family dwelling place, not an apartment building.[8] Agent Bloch testified at the trial that once you enter the house through the main entry doors, you have access to the rest of the house. Agent Bloch also testified that Davis's brother appeared to be living out of a suitcase, and appeared to be moving in or out, and the girl friend had not unpacked. The two separate apartments which the officers discovered during the search and which did not appear to be a part of the main house also looked as though someone was moving in or out. As a matter of fact, the trial court found that the only item of property left by the second floor tenant was a briefcase. The trial court also found that when the officers conducting the search discovered the separate occupancy of the two apartments and that Davis's brother and girl friend were living there out of suitcases, the officers did not search those areas any further. The only items seized during the search came from areas under Davis's use and control. Davis did use and occupy areas on every floor of the house. As the trial court pointed out, search warrants for a street address which later turns out to include separate residences or apartments have been upheld when the officers have reason to believe it is only a single family dwelling under the control of one person. *United States v. Santore,* 290 F.2d 51 (2d Cir.), *aff'd in relevant part,* 290 F.2d 74 (2d Cir. 1960) (en banc), *cert. denied,* 365 U.S. 834, 81 S.Ct. 745, 5 L.Ed.2d 743 (1961); *Houser v. Geary,* 465 F.2d 193 (9th Cir. 1972), *cert. denied,* 409 U.S. 1113, 93 S.Ct.

927, 34 L.Ed.2d 696 (1973). The trial court further concluded that *Steele v. United States,* 267 U.S. 498, 503, 45 S.Ct. 414, 416, 69 L.Ed. 757 (1925), provided a general rule that:

> . . . under the Fourth Amendment, a search warrant sufficiently described the place to be searched if "the officer with a search warrant can with reasonable effort ascertain and identify the place intended." Here, very little effort was needed, once the officers discovered the presence of two other "apartments" to determine which portions of the house were to be searched; relying on the underlying affidavit, which repeatedly named Alfonso Davis as the subject of the investigation, they quite sensibly limited the search to those areas which were under his control and subject to his use.

Memorandum Order of June 14, 1976. We agree with the trial court's analysis.

## V. IDENTITY OF THE INFORMER

██ Appellant contended at the suppression hearing that since the information from the informant contained in the affidavit was false and Davis did not occupy the house in its entirety, he was entitled to disclosure of the identity of the informant and an opportunity to examine him. He assigns the denial of this request as error, relying on *United States v. Carmichael,* 489 F.2d 983 (7th Cir. 1973); *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); *United States v. Marihart,* 492 F.2d 897 (8th Cir.), *cert. denied,* 419 U.S. 827, 95 S.Ct. 46, 42 L.Ed.2d 51 (1974). *Marihart, supra,* relied on *Carmichael, supra,* only so far as adopting a standard for suppressing evidence where a warrant has been obtained through misrepresentation of the police officer.[9] It did not deal with when disclosure of a government informer would

---

**8.** Appellant argues that just because there were several buzzers on the outside of the main entrance, officers should have known it was a multiple residence. This is not necessarily true since the officers' information indicated past tenants had left. At the suppression hearing,

officer Hitchens testified that Davis's name was the only one posted by the buzzers.

**9.** Davis uses this section to again argue that the evidence seized during the search of his house should have been suppressed—the theory here being that the affidavit in support of

be required. In *Roviaro, supra,* the informer was a participant in the crime defendant was accused of committing. This is not true here. This case is similar to *Rugendorf v. United States,* 376 U.S. 528, 534–35, 84 S.Ct. 825, 828, 11 L.Ed.2d 887 (1964), where the Supreme Court said:

> The necessity for disclosure depends upon "the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro,* 353 U.S. 53, 62 [77 S.Ct. 623, 629, 1 L.Ed.2d 639]. Petitioner did not develop any such criteria with reference to the merits of the case. On the contrary, a careful examination of the whole record shows that he requested the informers' names only in his attack on the affidavit supporting the search warrant. Having failed to develop the criteria of *Roviaro* necessitating disclosure on the merits, we cannot say on this record that the name of the informant was necessary to his defense. All petitioner's demands for identification of the informants were made during the hearings on the motion to suppress and were related to that motion. Never did petitioner's counsel indicate how the informants' testimony could help establish petitioner's innocence. (footnotes omitted.)

For all of the foregoing reasons, the judgment of the lower court is affirmed.

the warrant misrepresented the fact that Davis lived in the house alone. In *United States v. Marihart,* 492 F.2d 897 (8th Cir. 1974), this court adopted the standard that evidence would not be suppressed unless (1) the officer in making the affidavit was reckless and the misrepresentation was material, or (2), the misrepresentation was intentional. It is clear that the representation was neither reckless nor intentional. Both the law enforcement agencies independent attempt to ascertain who resided at Davis's house and the information received from the informant indicated there were no private areas. That the information may have been "stale", as found by Judge Larson, is understandable in light of the fact that occupancy other than by Davis was apparently in a state of flux.