UNITED STATES of America

v.

Phyllis BARBOUR, Appellant
(Three Cases).

Nos. 84–5477, 86–3010 and 86–3011.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 24, 1986.

Decided March 13, 1987.

Mary Patricia Roth, Washington, D.C. (Student Counsel), with whom Steven H. Goldblatt, Washington, D.C. (Appointed by this Court) was on the brief, for appellant.

David Howard Saffern, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Judith Hetherton, Ronald Dixon and Robert C. Godbey, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before MIKVA and BUCKLEY, Circuit Judges, and PARSONS,* Senior District Judge.

Opinion for the Court filed by Senior District Judge PARSONS.

PARSONS, Senior District Judge:

In 1984 Phyllis Barbour, appellant, was convicted in a jury trial of possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a), and of unlawful possession of a firearm after a felony conviction, in violation of 18 U.S.C.App. § 1202(a)(1). Barbour appeals the District Court's denial of her motion for a new trial, insisting that she had been denied effective assistance of counsel because of what she alleges to have been imprudent acts and omissions of her two attorneys. Because we find no error under the standards set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we affirm the District Court and allow the conviction to stand.

* Of the United States District Court for the Northern District of Illinois, sitting by designation pursuant to 28 U.S.C. § 294(d).

## I. BACKGROUND

On April 17, 1984, at approximately 9:40 p.m., five members of the Metropolitan Police Department armed with a search warrant conducted a search of appellant's two story house. In addition to the appellant, three other persons were in the house at the time of the search, Pernell Barbour, appellant's son, a Karen Fletcher, his girlfriend, and their baby. The officers on arriving positioned themselves at both the front and back door entrances and announced that they had a search warrant. Pernell allowed them into the house through the back door. Sergeant William Davis and Officer Bobby Dickens immediately went to the second floor of the house and began their search. Officers Yates and Richmond went downstairs and began a search of the basement. Sergeant Davis, the first officer to reach the second floor, testified that as soon as he was on the second floor he saw Phyllis Barbour lying across a bed in the front bedroom. She was startled by his sudden presence and hurriedly moved around onto the far side of the bed. As he drew close he observed her placing a "greenish weed substance" in a brown paper bag—a substance later determined to be marijuana. She then hurriedly got up and walked out of the bedroom into the second floor hallway. At about that time Officer Dickens was calling down the stairway to Officer Roberts, who already was back on the first floor, summoning him to come upstairs. As Roberts ascended the stairs he saw the appellant in the second floor hallway, but he went on past her to join Dickens in the search of the front bedroom.

In their search of the house the officers located ten and one-half pounds of marijuana, a .357 magnum revolver, and various drug paraphernalia. Most of the marijuana was found stuffed in plastic bags, located next to and under the bed on which appellant had been lying. The revolver was found wrapped in a towel in a closet in the front bedroom. The search of the bedroom of the appellant's son, Pernell, resulted in the recovery from a briefcase of only approximately two ounces of marijuana. The various items of drug paraphernalia were located in a washroom in the basement.

The government indictment charged Phyllis Barbour and Pernell Barbour with unlawful possession of marijuana with intent to distribute it. Appellant, who previously had been convicted of a felony, also was charged with unlawful possession of a firearm. The jury found the appellant guilty on all counts. It was in her post-trial motion for a new trial that she first made the claim that she had been denied effective assistance of counsel in the trial of her case. After conducting an evidentiary hearing on Barbour's motion for a new trial, the Court, on February 11, 1985, denied the motion and let the guilty verdict stand. The trial judge said that he had come to the conclusion that even had appellant's two attorneys been deficient and unprofessional in their performance, the defendant had not been prejudiced by their failures in that their performance did not sufficiently constitute ineffective counsel to have constituted a violation of the appellant's rights under the Sixth Amendment. Phyllis Barbour has appealed that decision. The original appeal of the judgment of conviction on the jury's verdict of guilty numbered 84–5477, and the interim appeal numbered 86–3010 from a denial of a motion for a new trial entered without an evidentiary hearing on the motion, have both been consolidated with the appeal from the denial of the motion for a new trial entered after a full evidentiary hearing on said motion, numbered 86–3011. The entire proceedings below are now before us.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

The scope of our review in evaluating a claim of ineffective assistance of counsel most recently has been outlined for us in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In *Strickland,* the Supreme Court established a two part test. First, the defendant must demonstrate that his attorney's performance "fell below an objective standard of reasonableness." *Id.* at 688, 104 S.Ct. at

2065. Second, there must be a showing that there existed a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. And "[f]ailure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Id.* at 700, 104 S.Ct. at 2071.

The Court held that the appropriate standard for determining an attorney's performance is that of reasonably effective assistance under prevailing professional norms. *Id.* at 688, 104 S.Ct. at 2065. It emphasized that the underlying purpose of the Sixth Amendment requirement of effective assistance is "to insure a fair trial" and achieve fundamental fairness. *Id.* at 686, 104 S.Ct. at 2064. When measuring an attorney's performance the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064. We begin with a strong presumption that an attorney's conduct lies within the wide range of professionally accepted performance. *Id.* at 689, 104 S.Ct. at 2065. And since there can be no detailed guidelines for measuring proper representation, any judicial review of counsel's performance must be made with the greatest degree of deference. *Id.*

■■■ Although counsel is permitted great latitude in how he manages his case, his discretion is not limitless. His failure to act on behalf of his client's best interests deprives his client of effective counsel. See *Nuttal v. Greer*, 764 F.2d 462 (7th Cir.1985). At the outset, counsel has an obligation to conduct a reasonable amount of pretrial investigation. *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066. See *Nealy v. Cabana*, 764 F.2d 1173 (5th Cir.1985). The amount of investigation depends upon the number of issues presented, the complexity of those issues, and the respective strategies of opposing counsel. *Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir.1985). Only when reasonable investigation has

been performed is counsel in a position to make informed tactical decisions. It is especially important that counsel adequately investigate the case in order that at the very least he can provide minimally competent professional representation. As was stated in *Crisp v. Duckworth*, 743 F.2d 580 (7th Cir.1984), "Effective representation hinges on adequate investigation and pretrial preparation ... [for] investigation may help an attorney develop or even discover a defense, locate a witness or unveil impeachment evidence." *Id.* at 583 (citing *United States v. DeCoster*, 487 F.2d 1197, 1204 (D.C.Cir.1973)).

In this case appellant alleges that the performance of her two lawyers constituted "ineffective assistance of counsel" because they (1) had no knowledge of Fletcher's presence in the upstairs bedroom or hallway, (2) failed to call key witnesses who could have testified that Phyllis Barbour had been seriously ill and bedridden, and (3) failed to move before trial for a severance from codefendant Pernell Barbour, a move which she says would have allowed Pernell to testify that the marijuana and revolver belonged to him and not to her. She further complains that her counsel (4) advised her to forego her right not to testify, thereby exposing her to being impeached by the fact of her prior conviction for drug distribution, and (5) failed to cross-examine Sergeant Davis regarding Fletcher's presence upstairs. She adds that both of her attorneys (6) had had minimal contact with her before the actual trial of the case, and that (7) one of her attorneys with whom she had had virtually no contact was the one who took over the active trial of the case, doing this without first having conferred with her.

Obviously, a reasonably careful pretrial investigation should have alerted counsel to Fletcher's presence in the house. At the post-trial hearing the appellant claimed that she told her attorneys about her prospective witnesses, whereas counsel testified that she failed to divulge to them the information about Fletcher until she was on the witness stand. Even if they were correct about this, at fault would have been counsels' failure to perform an adequate

pre-trial investigation. A suitable investigation would have included engaging appellant in comprehensive questioning as well as interviewing all potential witnesses. Similarly, their decision to have the appellant testify in spite of her prior criminal conviction for drug distribution could have been tactically unwise. When both mother and son are charged in the same indictment with possession of narcotics, whether to have either, both or neither of them testify requires a careful pretrial determination. In addition deficient investigation doubtlessly left counsel disarmed by the testimony of the police. It may have been that this is why they were in no position to refute the otherwise totally unrebutted testimony of Sergeant Davis about what he saw the appellant do when he arrived on the second floor, or to have disclosed justifiable doubts as to his credibility as a witness.

■ In applying the second part of the *Strickland* test, however, it appears that, assuming there were these failures in advocacy, when they are examined in the light of the whole record, they turn out to be insufficient to justify setting aside appellant's conviction. The post-trial evidentiary hearing conducted by the District Court disclosed the fact that even had counsel acted more effectively it cannot be said that "but for counsels' ineffectiveness" the appellant might have been acquitted. This is because the proposed testimony of witnesses not called by counsel still would have provided no basis for disturbing the convictions. The first potential witness, Sadie Murphy, a friend of the appellant, would have testified that during the weeks preceding the police search, Phyllis Barbour was physically ill and had difficulty walking because her legs were swollen. Florence Williams, a neighbor, would have testified that two hours before the police search, she found the appellant to have been sick and occupying the back bedroom, not the front bedroom on the second floor. But these proposed witnesses, Murphy and Williams, were not present in the house during the search, and their testimony could not have gone into the details of it, nor have served to refute the evidence that

Sergeant Davis saw the appellant on the bed in the front bedroom placing marijuana in a brown paper bag. Karen Fletcher would have testified that the narcotics and gun belonged to Pernell, that she had been in the front bedroom when the police arrived and that appellant had been ill; but this would not have contradicted the testimony of the police. Then there was co-defendant Pernell Barbour who testified at the post-trial evidentiary hearing that he was willing to testify to the fact that all of the marijuana and the gun belonged exclusively to him and that his mother had no knowledge of the presence of the contraband in her home. The fact that counsel at trial failed to call the son as a witness raised a serious question as to the effectiveness of counsel. And the question of whether or not there could have been a severance is irrelevant because Pernell was willing to testify even if it incriminated himself. However, he still could not have established that at the time of the search the appellant herself did not have physical possession of and exercise control over the marijuana. Pernell's claim of ownership of the marijuana at best would have served only to offer some plausible reason why his mother was in actual possession of the drug at the time Sergeant Davis entered the front bedroom.

Dispositive of this issue is whether or not Phyllis Barbour had the marijuana that was charged against her in her actual possession or under her control when she was confronted by Sergeant Davis. According to the evidence addressed at trial and in the post-trial proceedings, the only two persons present at the time were Davis and the appellant. The District Judge was in the best position to hear and weigh the testimony of Davis and the appellant and to evaluate their credibility as witnesses. See *United States v. Debango*, 780 F.2d 81, 85 (D.C. Cir.1986). Appellant contends that at the trial of the case vigorous cross-examination of Davis could have affected Davis' credibility, but none of the testimony offered in the posttrial evidentiary hearing would have served to refute or in any other way to contradict Davis' statements or un-

dermine his credibility. After the post-trial evidentiary hearing the District Court concluded that the appellant had suffered insufficient prejudicial harm from the failure of her counsel to call any other witnesses to justify a new trial. This conclusion is fully supported by all the evidence that was available. Appellant has simply failed to satisfy her burden of affirmatively establishing the kind of prejudice needed to constitute a violation of the Sixth Amendment. Counsel's deficient pre-trial and trial performances, assuming them to have been reprehensible, simply failed to add up to their having been so prejudicial that there was a "reasonable probability that, absent the errors, the fact-finder would have had a reasonable doubt" respecting Phyllis Barbour's guilt. *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2068.

### III. SUMMARY

In summary we have found that whether or not the overall performance of appellant's counsel in the preparation for and trial of her case failed to meet the objective standards of reasonableness of representation set forth in *Strickland*, on the basis of the entire record below we conclude as did the District Court, that such errors of representation attributable to counsel were insufficient to have deprived appellant "of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. at 2064. Accordingly, the District Court's denial of appellant's motion for a new trial is affirmed, and the judgment of conviction and sentence from which appeal first was taken is affirmed.