UNITED STATES of America

v.

**Juan M. GORDON, Appellant**
**(Two Cases).**

**Nos. 85–5201, 86–3028.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 4, 1986.

Decided Sept. 18, 1987.

As Amended Oct. 1, 1987.

W. Gary Kohlman, Washington, D.C., for appellant.

Robertson T. Park, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Ronald Dixon, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

WILL, Senior District Judge:

A jury convicted Juan Gordon of possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) (1981) and unlawful possession of drug paraphernalia in violation of D.C.Code § 33–550 (1981). Gordon raises two issues on appeal, but in light of our disposition we need address only one: whether the trial court erred by impaneling the jury in Gordon's absence, and if so, whether the error requires reversal.[1] We conclude that Gordon had a right to be present at jury selection, that he did not effectively waive this right, and that his absence was prejudicial. Therefore, we reverse his conviction and grant him a new trial.

1. Therefore, we do not reach Gordon's contention that the prosecutor committed reversible error when he invented a conversation between Gordon and a hypothetical drug dealer during his closing argument.

## I. Background

In the early morning hours of October 4, 1984, a Metropolitan Police Department Officer discovered Juan Gordon unconscious and slumped over the steering wheel of his locked and running automobile. Gordon was perspiring, with saliva foaming at his mouth. A necktie was wrapped around his right forearm and a needle and syringe were in his left hand. Between Gordon's right thumb and first finger was a puncture wound with blood trickling down. The officer radioed for assistance and then knocked on the driver window while yelling at Gordon to wake up.

Two officers responded to the radio call. As the three officers continued to try to rouse Gordon, they saw through the window a plastic bag with white powder on the rear seat, a small beer can cooker, and a flashlight. The officers managed to open the locked driver door, remove Gordon, and revive him. A subsequent search of Gordon's trunk revealed a large grocery store bag holding a smaller brown bag; inside that bag were some smaller plastic bags containing a tannish powder later determined to be a half pound of heroin.

By a two-count indictment, Gordon was charged with possession with intent to distribute heroin and possession of drug paraphernalia. Gordon was held in custody in lieu of a $100,000 surety bond pending his trial, which was scheduled for November 29, 1984.

On the morning of November 29th, after the deputy clerk called the case, the judge asked counsel to approach the bench for a short pre-trial meeting. At this time, Gordon's trial attorney, Gene Johnson, stated that the Marshals Service needed a written order before permitting Gordon to change into civilian clothing. The judge granted Johnson's request and informed counsel that he would return to chambers to await the arrival of the jury panel.

Shortly thereafter approximately thirty-five prospective jurors were led into the courtroom. The judge, informed that everyone was ready to proceed, also entered the courtroom. In addition to the prospective jurors, Gene Johnson and Assistant U.S. Attorney Ron Dixon were also seated in the courtroom. The defendant, however, was not present. Following the clerk's call to order, the following exchange occurred:

THE COURT: Would counsel approach the bench, please.

MR. JOHNSON: Yes, sir.

[At the bench]

MR. JOHNSON: Your Honor, for the record as a tactical matter, I would much prefer, with the Court's permission, not to bring the defendant out until such time as the jury is impaneled.

When the court sends them back to put their wraps away and get situated to hear testimony, at that time, I would like to have him brought out and he would be able to come back in the courtroom at that time if there is no objection.

MR. DIXON: No objection.

THE COURT: Very well.

The jury was then selected in Gordon's absence. The deputy clerk swore the jury without Gordon being present. With Gordon still in the holding cell, the judge gave the jury his preliminary instructions and recessed for lunch. Approximately 90 minutes later, the judge resumed the trial and Gordon made his first appearance in the courtroom in time to hear the government's opening statement. The record reveals that at no point during the trial did the judge ever ask or did Mr. Johnson ever offer any explanation why Mr. Johnson wanted Gordon absent during these early stages of trial.

Following his conviction, Gordon, now represented by new counsel, filed a motion for a new trial alleging, *inter alia,* that his absence from the courtroom during the voir dire, the swearing of the jury, and the judge's preliminary instructions violated his right to be present at all stages of his trial under Fed.R.Crim.P. 43(a) and the due process clause of the fifth amendment.

At a November 22, 1985 evidentiary hearing on the motion, Gordon testified that on the morning of trial he was in the cellblock behind the courtroom, that his attorney brought him some street clothes

to wear, and that Johnson left the clothing without having any discussion with him relating to his right to be present during jury selection. Gordon stated that he first realized a jury had been selected when he entered the courtroom after the lunch recess. He stated that although he was surprised and confused, he said nothing to his attorney.

Finally, Gordon testified that he would have liked to participate in the impaneling of the jury, and in fact, had he been present, would have sought to strike at least one of the prospective jurors who ended up on the panel. Specifically, Gordon testified that he would have sought to strike one prospective juror who, during voir dire, revealed that he had previously worked in law enforcement, had a brother-in-law who was a supervisor for the Metropolitan Police Department, had a brother who was a supervisor for the Federal Protection Service, and had studied constitutional and criminal law courses on his own.

Gene Johnson, Gordon's trial counsel, testified that on the morning of the trial his primary concern was to see that Gordon be dressed in street clothes and seated in the courtroom before the prospective jurors arrived, since Johnson did not wish the jurors to see Gordon escorted into the courtroom by the marshal and thus learn that Gordon was in custody. It was his belief, he stated, that the viewing of the defendant in these circumstances often led jurors to draw "negative inferences" about the defendant. To avoid this problem, Johnson made arrangements with Gordon's family to have civilian clothes brought to Gordon on the day of the trial.

However, a problem developed on the morning of the trial. Gordon's family was apparently late delivering the clothes and the panel was seated in the courtroom before Gordon finished changing. Johnson testified that he dropped off the clothing at the cellblock and returned to the courtroom where he discovered that "quicker than any jury panel" he had ever seen, the prospective jurors for Gordon's trial had "come out of the sky" and were seated in the courtroom. Johnson further testified that he then returned to the cellblock and discussed with Gordon the less than ideal scenario of a defendant being brought into the courtroom from the holding cell by a marshal in front of prospective jurors. Johnson stated that he advised Gordon of his right to be present during the jury selection process, and that he informed him that it was his "best judgment" that Gordon not put himself in that posture. Johnson stated that he and Gordon mutually agreed that under the circumstances it was best for Gordon to remain in the cellblock until after the jury had been selected. Finally, Johnson related that after the jury had been impaneled and Gordon was brought into the courtroom, Johnson asked him: "What do you think?" Johnson stated that Gordon replied: "Well, I got the best I could get."

On March 9, 1986, the district judge denied Gordon's motion for a new trial on the grounds that "no prejudice has been or could be shown by Gordon's absence during the voir dire and preliminary instructions."[2]

## II. RIGHT TO PRESENCE

Gordon asserts two bases for his contention that he had a right to be present

2. In the opinion denying the motion, the trial judge noted that at the time of trial counsel's request that Gordon be permitted to remain in the cellblock during jury selection, he had deemed it "inappropriate to direct [Johnson] to reveal the reason for his tactical decision to the prosecutor," and that "[p]erfectly or imperfectly," I ruled: "Very well.'" Further, in a footnote the judge stated:

Could the matter have been handled better? Probably, although it is not at all clear how. Two alternatives which occur to the Court are: (1) Mr. Johnson could have approached the bench and said that the jury had entered

the courtroom before Mr. Gordon, thereby creating a dilemma. Discussion then could have led to an informed resolution. (2) When Mr. Johnson stated that "as a tactical matter, I would much prefer, with the Court's permission not to bring the defendant out until such time as the jury is impaneled," the Court might have asked whether, without prejudicing his client, Mr. Johnson could say why he wanted to proceed that way. In a trial courtroom, however, perfection is an elusive goal.

*United States v. Gordon*, No. 84–406, slip op. at 3, 6–7 n. 2 (D.D.C. March 19, 1986).

during the impaneling of the jury: the due process clause of the fifth amendment and Rule 43(a) of the Federal Rules of Criminal Procedure.[3]

The Supreme Court has recently observed that although many of the modern cases involving the constitutional right to presence are rooted in the confrontation clause of the sixth amendment, the right is also "protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." *United States v. Gagnon*, 470 U.S. 522, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985) (per curiam). The *Gagnon* Court explained that a defendant has a constitutional right to be present at all trial-related proceedings "whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." *Id.* at 526, 105 S.Ct. at 1484 (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105–06, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1938)). Although the Court has emphasized that this right is not guaranteed "when presence would be useless, or the benefit but a shadow," *Snyder*, 291 U.S. at 106–07, 54 S.Ct. at 332–33, due process clearly guarantees that the defendant be allowed to be present "to the extent that a fair and just hearing would be thwarted by his absence." *Id.* at 108, 54 S.Ct. at 333. *See also Gagnon*, 470 U.S. at 526, 105 S.Ct. at 1484; *Kentucky v. Stincer*, —— U.S. ——, 107 S.Ct. 2658, 2667, 96 L.Ed.2d 631 (1987) ("defendant is guaran-

teed the right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure"); *Faretta v. California*, 422 U.S. 806, 819 n. 15, 95 S.Ct. 2525, 2533 n. 15, 45 L.Ed.2d 562 (1975) (defendant "has a constitutional right to be present at all stages of the trial when his absence might frustrate the fairness of the proceedings").

 Fed.R.Crim.P. 43(a) also gives a defendant an explicit right to be present "at every stage of the trial including the impaneling of the jury." As originally promulgated Rule 43 was intended to be "a restatement of existing law." Fed.R. Crim.P. 43, 1946 Advisory Committee Notes, ¶ 1. *See also* 8B *Moore's Federal Practice* ¶ 43.01[2].[4] As such, Rule 43 embodies the protections afforded by the sixth amendment confrontation clause, the due process guarantee of the fifth and fourteenth amendments, and the common law right of presence. *United States v. Washington*, 705 F.2d 489, 497 (D.C.Cir.1983). Thus, Rule 43 has traditionally been understood to codify both a defendant's constitutional right and his common law right to presence. Accordingly, its "protective scope" is broader than the constitutional right alone. *Id.* at 497–98 n. 5; *United States v. Allessandrello*, 637 F.2d 131, 139 (3d Cir.1980), *cert. denied*, 451 U.S. 949, 101 S.Ct. 2031, 68 L.Ed.2d 334 (1981);

---

**3.** Rule 43(a) reads:

Presence Required. The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.

**4.** Rule 43(a) is derived in part from two early Supreme Court cases, *Lewis v. United States,* 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1982) and *Diaz v. United States,* 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912). In *Lewis,* the Court reversed the conviction of a defendant who had not seen the jurors until after the challenges had been made and the jurors selected, holding that the "making of challenges was an essential part of the trial," and that it was one of "the substantial rights of the prisoner to be brought face to

face with jurors at the time when the challenges were made." 146 U.S. at 376, 13 S.Ct. at 138. In what has become an oft-quoted passage, the Court stated: "A leading principle that pervades the entire law of criminal procedure is that, after indictment found, nothing shall be done in the absence of the prisoner." *Id.* at 372, 13 S.Ct. at 137. In *Diaz,* the Court ruled that a defendant not in custody could waive his right to be present during trial, defining the right in broad language:

In cases of felony, our courts, with substantial accord, have regarded [the defendant's right to be present] as extending to every stage of the trial, inclusive of the impaneling of the jury and the reception of the verdict, and as being scarcely *less important to the accused* than the right of trial itself.

223 U.S. at 455, 32 S.Ct. at 251.

*United States v. Brown,* 571 F.2d 980, 986 & n. 5 (6th Cir.1978).[5]

■ Turning to the instant case, we find that Gordon had both a Rule 43 right to be present at voir dire as well as a fifth amendment right. The constitutional right grows out of the fact that Gordon's presence at jury selection had a " 'reasonably substantial' " relation to his " 'opportunity to defend against the charge.' " *Gagnon,* 470 U.S. at 526, 105 S.Ct. at 1484 (quoting *Synder v. Massachusetts,* 291 U.S. 97, 105–06, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934)). That Gordon's presence at voir dire was substantially related to his defense is indicated by the fact that he had no opportunity "to give advise or suggestion[s] ... to ... his lawyers." *Snyder,* 291 U.S. at 106, 54 S.Ct. at 332. During voir dire, for example, "what may be irrelevant when heard or seen by [defendant's] lawyer may tap a memory or association of the defendant's which in turn may be of some use to his defense" *Boone v. United States,* 483 A.2d 1135, 1137–38 (D.C.App.1984). *See also United States v. Washington,* 705 F.2d at 497.

■ A defendant's presence at jury selection is also necessary so that he may effectively exercise his peremptory challenges. *Washington,* 705 F.2d at 497. The process of peremptory challenges is essential to an impartial trial. *Lewis v. United States,* 146 U.S. at 378, 13 S.Ct. at 139. As Blackstone points out, "how necessary it is that a prisoner ... should have a good opinion of his jury the want of which might totally disconcert him; the law wills not that he should be tried by any one man against whom he has conceived a prejudice even without being able to assign a reason for his dislike." 4 W. Blackstone, Commentaries *353, *quoted in, Lewis v.*

*United States,* 146 U.S. at 376, 13 S.Ct. at 138. *See also Alessandrello,* 637 F.2d at 151. Hence our conclusion that Gordon had both a constitutional right as well as a Rule 43(a) right to be present at voir dire.

Guaranteeing a defendant a right to presence, however, does not answer the different and more difficult question whether a particular defendant has waived this right. The real issue presented by this appeal therefore is not whether Gordon had a right to be present at voir dire but whether Gordon effectively waived that right. We now consider this question.

### III. WAIVER

■ Although, as we have noted, a defendant has a right to be present at jury selection, this right may of course be waived. *See United States v. Crutcher,* 405 F.2d 239, 243 (2d Cir.1968), *cert. denied,* 394 U.S. 908, 89 S.Ct. 1018, 22 L.Ed.2d 219 (1969) ("the right to be present at one's trial is a personal right that may be waived by a defendant").[6] Thus, we must address the question whether, as the government alleges, Gordon's trial counsel's specific request that Gordon be permitted to absent himself from the entire jury selection process operated as an effective waiver. In response to the government's waiver claim, Gordon makes two distinct arguments. First, Gordon argues that the right to be present at the impaneling of the jury, like the right to counsel, trial by jury, and the confrontation of witnesses is so "essential to the integrity of the criminal justice system" that it can never be waived by "the naked representation of defense counsel," but requires instead a personal on-the-record waiver by the accused himself. Thus, Gordon con-

---

5. Rule 43(a), for example, mandates the defendant's presence at certain stages of trial when defendant's presence would not be constitutionally required. *See, e.g., United States v. Gagnon,* 470 U.S. 522, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985) (holding that defendant's presence at *in camera* hearing between judge, juror, and lawyer, while not constitutionally required was nevertheless a "stage of the trial" at which defendant's right to presence was guaranteed by Rule 43).

6. Thus, Rule 43(b) provides:

(b) Continued Presence Not Required. The further progress of the trial to and including the return of the verdict shall not be prevented and the defendant shall be considered to have waived his right to be present whenever a defendant, initially present

(1) voluntarily absents himself after the trial has commenced (whether or not he has been informed by the court of his obligation to remain during the trial)....

cludes, defense counsel's representation to the bench that defendant, for "tactical" reasons, had declined to appear in the courtroom, could never serve as a sufficient basis for waiver. Alternatively, Gordon argues that even if an on-the-record waiver is not required under these circumstances, the record does not support a finding of a knowing and voluntary waiver.

To support the claim that on the record waiver is necessary, Gordon relies primarily on this court's opinion in *Cross v. United States*, 325 F.2d 629 (D.C.Cir.1963). There, defense counsel advised the trial judge in midtrial that defendant, who was in custody and seated in a room adjacent to the courtroom, had declined to return to the trial. Without further inquiry, the court ordered the trial to "proceed with the defendant in absentia" determining that counsel's representation was a sufficient basis for finding waiver. On appeal, this court noted the federal procedures that govern waivers of defendants' rights to indictment and to trial by jury and held that "[a]t least an on-the-record statement in open court by the defendant himself" is required before he can waive his right to presence at trial. *Cross*, 325 F.2d at 633.

 Although *Cross*, strictly speaking, did not concern presence at voir dire, we discern no principled difference between voir dire and other stages of trial that would affect this case. A defendant's presence at voir dire is essential not only because it is necessary to the appearance of impartiality but

> because the defendant has unique knowledge which is important at all stages of the trial, including the *voir dire*. At the *voir dire* he may, for example, identify prospective jurors that he knows. He may also have knowledge of facts about himself or the alleged crime which may not have seemed relevant to him in the tranquility of his lawyer's office, and thus may not have been disclosed, but

> which may become important as the individual prejudices or inclinations of the jurors are revealed. He may also be a member of the community in which he will be tried and might be sensible to particular local prejudices his lawyer does not know about.

*Alessandrello*, 637 F.2d at 151 (Higginbotham, J., dissenting).

On the subject of waiver, "it has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' ... This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused." *Cross*, 325 F.2d at 631 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464–65, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). Where the defendant is in custody, " 'the serious and weighty responsibility' of determining whether he wants to waive a constitutional right requires that he be brought before the court, advised of that right, and then permitted to make 'an intelligent and competent waiver.' " *Id.*

In applying this rule to the instant case, it is clear that rather than permitting defense counsel to waive Gordon's right to presence, the court should have held an on-the-record hearing to advise Gordon of his right to be present at voir dire and obtained a personal waiver in open court. The slight additional burden on the criminal justice process wrought by a personal waiver requirement is more than offset by avoidance of lengthy appeals to determine whether the defendant's right to presence has been violated. The practice of obtaining open court waivers is, as we have noted, particularly warranted in cases like this where the defendant is not out on bail, but remains in custody and readily available to the court.[7]

---

7. The distinction between custodial and non-custodial defendants is an important one. There is even some authority, albeit dictum, for the proposition that a defendant in custody does not have the power to waive his right to be present "because his presence or absence is not within his own control." *Diaz,* 223 U.S. at 455, 32 S.Ct. at 251. *See Cross v. United States,* 325 F.2d 629, 631 (D.C.Cir.1963); *United States v. Crutcher,* 405 F.2d 239, 243 (2d Cir.1968); *Evans*

Further, we find an on-the-record-waiver desirable because in its absence it is difficult, if not impossible, to determine whether the defendant has knowingly and intelligently relinquished a known right. Here, for example, even accepting Johnson's description of what occurred on the morning of the trial and rejecting Gordon's version, as the district court did, Johnson's description could not support a finding that Gordon knowingly and intelligently waived his right to be present during voir dire.

At best, Johnson's version of events shows that Gordon was operating under the mistaken belief that the *only* way he could exercise his right to be present at his jury selection was to be escorted into the courtroom by a marshal in front of the prospective jurors; a course of action, that by Johnson's own description might well have prejudiced Gordon. Johnson admitted that such a scene might have created a negative impression in the minds of the jury. For example, the jury might have viewed Gordon's pre-trial incarceration (although the result of his inability to post bail) as due to such other causes as untrustworthiness or dangerousness. *Cf. Holbrook v. Flynn*, 475 U.S. 560, 106 S.Ct. 1340, 89 L.Ed.2d 525 (1986). Johnson apparently never informed Gordon that there were other, less prejudicial, courses of action, such as the obvious one of asking the judge to remove the prospective jurors while Gordon took his seat.

Gordon, even accepting Johnson's description of their conversation, was thus confronted with a false dilemma. He faced the Hobson's choice of either risking the "negative inferences" that his counsel assured him would be drawn should he go into the courtroom, or remaining behind. Given the faulty either-or premise of the supposed dilemma, it is unreasonable to suggest that Gordon's desire to avoid "negative inferences" constituted a knowing and voluntary waiver of his right to be present. The record is clear that Gordon was willing and able to appear in court, but that he missed the critical beginnings of his trial solely because of misinformation or lack of information from his attorney and the trial judge's failure to satisfy himself that Gordon knew what he was doing. If the trial judge had insisted that Gordon make a personal waiver, however, it is likely that this misunderstanding could have been cleared up. For once the judge was apprised of the real reason behind defense counsel's co-called "tactical" request, he could have remedied the problem simply by ordering the jury out of the courtroom in order to allow Gordon time to take his seat.[8]

---

*v. United States*, 284 F.2d 393, 395 (6th Cir. 1960).

In the case of *non-custodial* defendants, however, the Supreme Court has held that a defendant can waive his right to presence simply by voluntarily absenting himself at trial. For example in *Taylor v. United States*, 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973), a noncustodial defendant failed to return to court for the afternoon session of his first day of trial. In rejecting the defendant's contention that "his mere voluntary absence from his trial cannot be construed as an effective waiver ... unless it is demonstrated that he knew or had been expressly warned by the trial court not only that he had a right to be present but also that the trial would continue in his absence," the Court noted:

It is wholly incredible to suggest that petitioner, who was at liberty on bail, had attended the opening session of his trial, and had a duty to be present at the trial, entertained any doubts about his right to be present at every stage of his trial. It seems equally incredible to us ... that a defendant who flees from the courtroom in the midst of a trial—where judge, jury, witnesses and lawyers are present and ready to continue—would not know that as a consequence the trial could continue in his absence.

*Id.* at 20, 94 S.Ct. at 196.

*See also United States v. Schocket*, 753 F.2d 336, 339 (4th Cir.1985) (right to be present waived when non-custodial defendant absent from trial and no indication absence was involuntary); *Finney v. Rothgerber*, 751 F.2d 858, 862 (6th Cir.1985) (non-custodial defendant waived right to be present at remainder of trial by failing to return to courtroom for continuation of enhancement phase of trial following a luncheon recess); *Golden v. Newsome*, 755 F.2d 1478, 1481 (11th Cir.1985) (defendant who escapes from custody during trial voluntarily absents himself from the proceedings and thereby waives right to be present during remainder of trial and during sentencing).

8. In spite of the dissent's assertions to the contrary, our holding requiring an on-the-record-waiver does not "leav[e] *Washington* in considerable doubt." Diss. op. at 131. Nor do we agree that "*Washington* militates strongly

## IV. Harmless Error

■ Having determined that Gordon's statutory and constitutional rights were violated by the impaneling of the jury in his absence, we must make one further inquiry: whether the government has met the burden of showing that the trial court's error was "harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 21–22, 87 S.Ct. 824, 826–27, 17 L.Ed.2d 705 (1967). *See also, Washington*, 705 F.2d at 193; *Wade v. United States*, 441 F.2d 1046, 1050 (D.C.Cir.1971) ("The standard by which to determine whether reversible error occurred ... is not whether the accused is actually prejudiced but whether there is any reasonable possibility of prejudice.").[9]

On the harmless error question, Gordon first argues that a defendant's absence during the entire jury selection process can never be determined to be harmless error, and second, that under the facts of this case, the error was not harmless beyond a reasonable doubt.

As to Gordon's first argument, we are aware that at least one other court presented with this question has held that without an effective waiver, a defendant's complete absence from voir dire "can never be treated as harmless error." *Crutcher*, 405 F.2d at 244. *See also Alessandrello*, 637 F.2d at 143–44 n. 23. We need not, however, decide whether such error can *ever* be harmless; it is enough to find on the facts of this case that it was not.

Our review of the case law on the harmless error question reveals that in all of the cases where the absence of a defendant has been deemed harmless, the defendant was absent during only a small portion of the jury selection process. For example, in *United States v. Washington*, 705 F.2d 489 (D.C.Cir.1983), this court found the exclusion of the defendant from bench or sidebar examinations of prospective jurors harmless because (1) defendant "was present in the courtroom during the entire time," (2) only "a very limited portion of voir dire was conducted at the bench," with the defense attorney's assistant taking "very careful notes," and (3) defendant was permitted to "confer with counsel regarding jurors' responses at the bench." *Id.* at 498.

against any requirement that waivers of attendance at jury voir dire must occur in open court." Diss. op. at 133. To begin with, the decision in *Washington*, unlike the decision here, was based solely on Rule 43 and not on the due process clause of the fifth amendment. *Washington*, 705 F.2d at 497–98 n. 5. Second, the *Washington* court determined that because the right to hear and observe juror responses made at the bench was "a right infrequently exercised," *id.* at 498, a defendant's silence could, under those limited circumstances, effect a valid waiver of his Rule 43(a) right to presence. As we discuss in text, the facts in the instant case are clearly distinguishable from those in *Washington*. Here, Gordon was absent during *all* of the voir dire and jury selection. Additionally, we have determined that Gordon had a right both under Rule 43 and the due process clause of the fifth amendment to be present at these proceedings. Where constitutional rights are involved, the standard for determining whether a criminal defendant has validly waived such a right is considerably more stringent than that provided by Rule 43(b).

For similar reasons, we also reject the dissent's interpretation of *United States v. Gagnon*, 470 U.S. 522, 105 S.Ct. 1482, 85 L.Ed.2d 486 (1985) (per curiam). There, the Court relying on Rule 43(b) held that "failure by a criminal defendant to invoke his right to be present under Federal Rule of Criminal Procedure 43 at a conference which he knows is taking place between a judge and a juror in chambers constitutes a valid waiver of that right." *Id.* at 529, 105 S.Ct. at 1486. The *Gagnon* Court, however, found no constitutional violation because: (1) "[t]he encounter between the judge, the juror, and Gagnon's lawyer was a short interlude in a complex trial"; (2) "the conference was not the sort of event which every defendant has a right personally to attend under the Fifth Amendment"; and (3) Gagnon "could have done nothing" had he been at the conference, nor would he "have gained anything by attending." *Id.* at 527, 105 S.Ct. at 1485. In concluding that Gagnon had no fifth amendment due process right to attend the *in camera* discussion, the Court never reached the question of whether silence could ever constitute an effective waiver of the constitutional right. *Gagnon* therefore provides no support for the claim that an on-the-record waiver is unwarranted under the facts of this case.

9. Both the statutory and constitutional rights are subject to the harmless error analysis. *See* Fed.R.Crim.P. 52(a); *see also Rogers v. United States*, 422 U.S. 35, 40, 95 S.Ct. 2091, 2095, 45 L.Ed.2d 1 (1975) ("a violation of Rule 43 may in some circumstances be harmless error").

Similarly, in *United States v. Dioguardi*, 428 F.2d 1033 (2d Cir.), *cert. denied*, 400 U.S. 825, 91 S.Ct. 50, 27 L.Ed.2d 54 (1970), and *United States v. Alessandrello*, 637 F.2d at 131, defendants were continually present in the courtroom during the impaneling of the jury. However, at one point during the voir dire, the respective judges questioned prospective jurors individually, out of the hearing of the defendants (and in one case out of the sight as well) about the extent to which they were exposed to pretrial publicity. In both cases, the appellate courts concluded that this type of procedure did not constitute reversible error.

The defendants' presence in the courtroom throughout the entire voir dire was also crucial to the Eighth Circuit's opinion in *United States v. Chrisco*, 493 F.2d 232 (8th Cir.), *cert. denied*, 419 U.S. 897, 95 S.Ct. 84, 42 L.Ed.2d 77 (1974). There, the attorneys exercised their challenges for cause, the court recessed for lunch, and the defendants were removed from the courtroom. The attorneys, however, remained in the courtroom to exercise their peremptory challenges. Following the recess, the courtroom clerk read the list of jurors who had been selected. At this point, the defendants apparently expressed their disapproval to counsel over some of the jurors who had been seated. The defense counsel did not make a formal objection to the court. Reviewing this situation on appeal, the court held that the Constitution and Rule 43 guaranteed a defendant the right to be present at all steps of selecting a jury, including the exercise of peremptory challenges. Nevertheless, it concluded that the fact that defendants were present at the time the clerk gave effect to the strikes and had registered their opinion with their attorneys, demonstrated that there was no error. *See also United States v. Bascaro*, 742 F.2d 1335, 1349 (11th Cir.1984) (no error where lawyers-only conference and decision making conducted outside earshot of defendants during peremptory strike phase of jury selection process).

The facts in the instant case are obviously far different from those in *Washington, Dioguardi, Alessandrello*, and *Chrisco*.

*Gordon* was absent not merely for a small portion of jury selection but for *all* of it. He observed not a single prospective juror, heard not a single response to the court's questions concerning personal and general matters, and participated in not a single peremptory challenge. Moreover, defense counsel shared no notes with him, nor did he consult with him about what took place during this stage of the trial. These circumstances make it impossible to apply the foregoing cases to the detriment of the defendant, for these cases cannot support a finding that absence throughout the *entire* voir dire process is harmless error; if anything, they assume the opposite. *See e.g., Alessandrello*, 637 F.2d at 143 n. 23. In reaching this conclusion, we reiterate the importance to a fair trial of defendant's presence at voir dire.

This brings us to Gordon's second argument against a finding of harmless error; that is, that his absence was not harmless beyond a reasonable doubt. Here, for example, Gordon testified that had he been present at voir dire, he would have sought to challenge the juror who had previously worked in law enforcement, whose brother worked for the Federal Protection service, and whose brother-in-law was a supervisor for the Metropolitan Police Department. Surely there was sufficient possibility that this juror's participation might weigh against the defendant to make loss of the opportunity to challenge him on voir dire a real injury.

Additionally, there is the question of what went on in the juror's minds as they spent the first several hours of the trial wondering where the defendant was. The fact that a defendant, sitting at counsel table, does not go to the bench during a small portion of the voir dire quite likely escapes the notice of the jury. A defendant, however, who does not make his appearance until midway through the first day of his trial is surely noticed by the jury, and it is not beyond a reasonable doubt that "the jury speculated adversely to the defendant about his absence from the courtroom." *Wade*, 441 F.2d at 1050. To hold Gordon's absence harmless under

these circumstances therefore would be to "reconstruct what might have eventuated had he been present, when that cannot truly be reconstructed with a degree of certainty necessary to avoid the reasonable possibility of prejudice." *Id.*[10]

## IV.

In conclusion, we hold that Gordon had a statutory and a constitutional right to be present at the voir dire and impaneling of his jury, that he did not effectively waive this right under the test enunciated in *Johnson v. Zerbst,* and that his total absence from the proceedings resulted in a reasonable possibility of prejudice and therefore was not harmless beyond a reasonable doubt. Accordingly, the judgment of the trial court is reversed and the case remanded for a new trial.

WILLIAMS, Circuit Judge, dissenting:

I agree with the majority that the crucial question in this case is whether appellant made a knowing and intelligent waiver of his right to be present at the selection of the jury. I do not agree, however, that a knowing and intelligent waiver may only be found when a defendant has made a declaration in open court, nor that the legal advice on which such a waiver rests must

attain the lofty standards imposed by the majority. Because the record gives ample support to the trial court's finding of a knowing and voluntary waiver, I respectfully dissent.

## I. WAIVER THROUGH COUNSEL RATHER THAN IN OPEN COURT

Defense counsel informed Gordon of his constitutional right to be present at voir dire and of possible tactical disadvantages in exercising that right.[1] Based on this information, Gordon decided not to exercise this right, and defense counsel conveyed that decision to the court. The one previous case in this circuit on point suggests that such a waiver—without the court's explaining his rights to the defendant and indeed without any direct colloquy between the court and defendant—was altogether valid. In *United States v. Washington,* 705 F.2d 489 (D.C.Cir.1983), 13 prospective jurors who had answered affirmatively to general questions were further questioned at the bench, out of the hearing of the defendant. After six had been questioned, counsel requested that the defendant be allowed to participate, but the trial court refused, and the remaining seven were also questioned at the bench. A panel of this

---

**10.** The dissent asserts, without explanation, that our analysis of the defendant's waiver is "in substance an evaluation of the effectiveness of his counsel." Diss. op. at 131–133. The issue of the effectiveness of Gordon's trial counsel, as the dissent acknowledges, is not one which Gordon has presented and argued on appeal. Diss. op. at 131 n. 3. We are therefore surprised that the dissent finds it appropriate to raise and answer it here. *See Carducci v. Regan,* 714 F.2d 171, 177 (D.C.Cir.1983) ("The premise of our adversary system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued before them."). In any event, when dealing with rights that must be *personally* waived, waiver and effectiveness of counsel are wholly distinct issues. Maintaining the distinction has consequences for, as the dissent notes, the *Strickland* test imposes on the defendant the burden of proving prejudice, 466 U.S. 668, 693, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984), while the harmless error standard requires the government to show lack of harm beyond a reasonable doubt. A cynic might conclude that the dissent raises

the *Strickland* question in an attempt to shift the burden of proving harm from the government to the excluded criminal defendant who is least able to demonstrate what would have occurred had he been in attendance. One can argue that the dissent thus lapses into what it accuses the majority of doing, that is, employing the wrong analysis to take advantage of the more favorable burden of proof.

**1.** The trial court, after a hearing in which defendant and defense counsel testified, found the former incredible, the latter credible. Joint Appendix ("J.A.") at 140. Given our duty to respect the findings of fact by district courts unless clearly erroneous, *Campbell v. United States,* 373 U.S. 487, 493, 83 S.Ct. 1356, 1360, 10 L.Ed.2d 501 (1963); *see generally* 2 C. Wright, *Federal Practice and Procedure* § 374 (1982), I am baffled by the majority's gratuitous expression of skepticism as to that credibility determination. *See* Maj. at 126 ("even accepting [defense counsel's] description ..., as the district court did," no knowing and intelligent waiver could be found).

court found error in the sidebar examination of the last seven, explaining,

> In normal cases the defendant upon request should be allowed to observe and hear juror responses made at the bench. But because it is a right infrequently exercised and usually delegated to counsel, unless a specific request is made for the defendant to participate at bench examinations of prospective jurors, such right shall be deemed to have been waived.

*Id.* at 497. The court explicitly stated, "[W]e do not think the right to be present during voir dire is on the same level as, for example, entering a plea or the presentation of evidence." *Id.*

*Washington* indicates that, despite the unquestioned value of the right to be present at voir dire, waiver of that right requires no extraordinary measures. Indeed, it makes clear that silence alone will suffice to waive the right when the defendant is present and examinations are being conducted out of his or her hearing. In the instant case, an express waiver by the defendant was made on the advice of counsel and then communicated to the court. In light of *Washington,* the district court was justified in supposing that no more was required.

In finding to the contrary, the majority relies primarily on *Cross v. United States,* 325 F.2d 629 (D.C.Cir.1963), a decision thoroughly undermined by later Supreme Court authority. In *Cross* defendant's counsel advised the court, at the end of a recess, that the defendant (who was in custody) declined to return to the courtroom. The trial court proceeded without him. This court held that presence at trial was so vital that it was improper to proceed without first securing an on-the-record statement by the defendant in open court. In *Taylor v. United States,* 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973) (per curiam), however, a defendant (not in custody) disappeared after the trial began. Trial proceeded to conviction. Defendant later complained that his disappearance could not be treated as a waiver, as he had not been warned that he had a right to be present and that the trial would continue in his absence. The Supreme Court unanimously rejected the claim. The waiver by conduct was fully effective without evidence that defendant was aware of the consequences.

It is true, of course, that here as in *Cross* the defendant was in custody, so that further colloquy as to the basis of his waiver would have been possible. But if the Supreme Court had regarded an on-the-record judicial explanation of the defendant's options as important, it could in *Taylor* have simply required trial judges to routinely instruct the defendant on the consequences of flight. The Court's opinion is hardly consistent with the *Cross* court's apparent belief that waiver in open court is (where physically possible) necessary to justify any absence, no matter how minute.

*Cross* is even more clearly undermined by *United States v. Gagnon,* 470 U.S. 522, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985). There the Court held that defendants' silent acquiescence in the judge's *in camera* interrogation of a witness constituted a waiver of their rights under Federal Rule of Criminal Procedure 43. *Id.* at 529, 105 S.Ct. at 1486. In *Gagnon* there was no problem of the defendants' being absent. The trial court could readily have given them an explanation of their rights under Rule 43 as they related to the colloquy; the Court was clear that she need not do so. Nor, indeed, was there evidence that defense counsel had so much as mentioned to defendants their right to be present at the interrogations.

Thus our decision in *Washington,* that a defendant may waive his right to participate in jury selection without the trial court's giving him a detailed explanation of his options, is well supported by Supreme Court decisions. Any implications to the contrary in *Cross* plainly lack such support.

Despite *Washington,* the majority equates the right to be present at voir dire with the right to be present at the presentation of evidence, citing only a dissent in *United States v. Alessandrello,* 637 F.2d 131, 151 (3rd Cir.1980) (Higginbotham, J., dissenting), *cert. denied,* 451 U.S. 949, 101

S.Ct. 2031, 68 L.Ed.2d 334 (1981). Judge Higginbotham suggested that a defendant's intimate knowledge of the facts of the case might give him special sensitivity in assessing "individual prejudices or inclinations of the jurors" revealed in the voir dire. *Id.* at 151. But defendant here (as was also true in *Alessandrello*) makes no claim that any such sensitivity was relevant to the jury selection. Instead, using information that he could have secured from counsel the moment he joined him at the counsel table (and for all we know did secure), defendant raises merely a garden-variety concern about a prospective juror's prior work in law enforcement and relation to other law enforcement officers (brother, brother-in-law). The decision not to use a peremptory challenge on such a juror is a standard judgment call that defense counsel must make every day; there is no reason to believe that a defendant will have unique insights on the issue. Certainly Gordon has revealed none.

The court blithely justifies the new requirement by characterizing it as a "slight additional burden on the criminal justice process." Maj. at 125. That remains to be seen. Most obviously, this approach leaves *Washington* in considerable doubt. There the court regarded a defendant's silence during portions of the voir dire conducted at the sidebar as effecting a valid waiver. But if defendant's presence at these inquiries is as important as the court now declares, it is hard to see why. Unless the judge makes the sort of general anticipatory warning that the Supreme Court said was unnecessary in *Taylor* and *Gagnon*, there is no way of knowing whether defendants are aware of their right to be present at such colloquies or of the consequences of foregoing the right: a loss of the opportunity to evaluate or respond to things that may be said or facial expressions that may be revealed. Further, since

this case itself involves no more than a judgment conventionally made by lawyers, it draws in doubt the validity of all commitments made at sidebar conferences, in the absence of an explicit judicial statement of defendant's rights.

## II. Sufficiency of Counsel's Advice

The court does not stop at finding a requirement that a waiver of the right to presence during jury selection must occur in open court and on the record. Quite apart from that, it would evidently decline to hold the waiver knowing and intelligent. Maj. at 126. This conclusion, resting on a careful hindsight examination of the advice supplied by Gordon's lawyer, makes an end-run around the law defining the effective assistance of counsel.

When he discovered that the panel of prospective jurors had been brought into the courtroom before Gordon, his lawyer doubtless could have formulated a broader set of choices for Gordon than he did. Besides the ones he presented—delaying his entrance until a jury had been selected (foregoing the right to participate) and entering under the wing of the marshals (revealing the fact of his custody)—there was the possibility of asking the judge to have the jury panel withdrawn, to allow Gordon to get settled in the courtroom, and then to bring the jury back. All this is obvious now, as we examine it free from the surprise created by the delay in securing Gordon's street clothes and the speed of the jury panel's appearance.[2]

This evaluation of defendant's waiver is in substance an evaluation of the effectiveness of his counsel. Once Gordon's complaint is recognized as such, there can be little doubt that it fails.[3] To succeed on such a claim, a defendant must show first that "counsel's representation fell below an objective standard of reasonableness,"

---

**2.** Brief for Appellee at 9 indicates that the delay was caused by the late arrival of the street clothes brought by a member of appellant's family. Testimony by appellant's attorney at the Motions Hearing also suggested that the jury was brought in unusually quickly. J.A. at 131. The precise cause for the delay is unclear, but even so, it is reasonably clear that unforeseen circumstances required a revision of prior plans immediately before trial.

**3.** Indeed, the district court found defendant's ineffective counsel claim to be frivolous, and defendant does not challenge that determination on appeal.

*Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), and second that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. at 2064. With regard to the first showing, *Strickland* makes plain that a court evaluating effectiveness must resolutely avoid the omniscience of hindsight:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 689, 104 S.Ct. at 2065 (citation omitted). Further, the reviewing court must "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. at 2066; *see United States v. Barbour,* 813 F.2d 1232, 1234 (D.C.Cir.1987).

Here, the court characterizes the neglected alternative solution—a request that the

court order the jurors' panel temporarily withdrawn to permit defendant to enter—as "obvious." Maj. at 126. But that characterization, so easy from appellate chambers after perusal of the briefs and record, is based upon precisely what the Supreme Court forbade in *Strickland:* reliance on hindsight, second-guessing of counsel, and disregard of counsel's perspective at trial. The district court described appellant's retained counsel as "very experienced and able," Mem. op. at 4, Joint Appendix ("J.A.") at 139, and nothing in the record undermines that conclusion. Nor does anything suggest that counsel's judgment call troubled appellant until, after conviction, he and new counsel combed the record for possible error. When appellant first observed the jury selected in his absence, he asked for counsel's opinion of it. Counsel replied, "Well, I got the best I could get." J.A. at 133. So far as appears, appellant did not at the time contest the judgment.

One can hardly disagree with the district court's own observation that the matter might have been handled better. Mem. op. at 7–8 n. 2, J.A. at 142–43 n. 2. But *Strickland* emphatically prohibits application of any such standard. By contrast, the majority's approach ignores the realities of trial and the frailties of human nature. Given the benefit of *Strickland's* strong presumption, defense counsel's advice on voir dire qualified as effective assistance of counsel, and the waiver was therefore necessarily knowing, voluntary and intelligent.[4]

Since the first part of the *Strickland* test is not satisfied, it may be superfluous here to delve into the second part. The majority's harmless error standard, however, completely reverses the allocation of burden. While *Strickland* requires that the defendant prove prejudice, 466 U.S. at 693, 104 S.Ct. at 2067, the harmless error

---

4. It is worth noting that even in the sensitive area of custodial interrogation, where law enforcement officers must provide warnings of legal rights and the consequences of waiver, *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), comprehensiveness is not required. *See Colorado v. Spring,* —— U.S. ——,

107 S.Ct. 851, 93 L.Ed.2d 954 (1986) (person arrested in illegal purchase of firearms may be questioned on criminal record without being informed that answers might be used against him in murder trial not related to firearms episode).

standard requires the government to show lack of harm beyond a reasonable doubt.

Further, *Strickland* instructs that in evaluating the impact of the challenged decision, the reviewing court must presume that the jury or judge acted according to law. Prejudice cannot be inferred merely because an alternative approach might have led to a favorable verdict because of "the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like. A defendant has no entitlement to the luck of a lawless decisionmaker...." 466 U.S. at 695, 104 S.Ct. at 2068. Under the majority's approach, there appears to be such an entitlement. Here, the majority does not assert even a remote chance that the voir dire procedure here led to an *incorrect* verdict, merely that it deprived appellant of a possible fluke. For that fluke to take effect, defendant would have had to persuade counsel to exercise a peremptory challenge against the juror linked to law enforcement, and that juror's replacement would have either to have turned the jury around or at least (to secure a hung jury) to have held out for acquittal.

Astute counsel in this circuit will doubtless recognize the opportunities presented by this decision. Defendants who lose before the jury may now secure appellate review of any tactical decision made by counsel and defendant. That review may be conducted free of *Strickland's* limits, even though it will in essence be no more than a claim of ineffective assistance of counsel.

\* \* \*

Our decision in *Washington* militates strongly against any requirement that waivers of attendance at jury voir dire must occur in open court; that view is well-supported by the Supreme Court decisions in *Taylor* and *Gagnon,* allowing waivers by action (in *Taylor*) and silence (in *Gagnon*) to be effective without the trial court's fully advising the defendant of his rights and canvassing his options. The majority's further finding that appellant's waiver was not knowing and intelligent thoroughly undermines the Supreme Court's criteria for evaluating claims of ineffective assistance of counsel, with potentially serious implications for criminal adjudications in this circuit. I dissent.